2006 WY 10

Timothy J. and Janet R. **BRITT**,
Appellants (Petitioners),

v.

**FREMONT COUNTY ASSESSOR**,
Appellee (Respondent).

No. 05–55.

Supreme Court of Wyoming.

Jan. 18, 2006.

Representing Appellants: Beverly J. Scott, of James and Scott, P.C., Riverton, Wyoming.

Representing Appellee: James Whiting, Deputy Fremont County Attorney, Lander, Wyoming.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

BURKE, Justice.

[¶ 1] Appellants, Timothy J. Britt and Janet R. Britt, challenged the *ad valorem* tax assessment of their cabin located on federal land in Fremont County. The Fremont County Board of Equalization granted the Britts relief. The County Assessor appealed to the State Board of Equalization which reversed the decision of the county board and upheld the assessment. The Britts filed a petition for review of administrative action, and the district court affirmed the decision of the state board. Upon our review, we affirm.

## ISSUES

[¶ 2] Mr. and Mrs. Britt present several issues:

I. Did the trier of facts in the first instance, the Fremont County Board of Equalization, correctly find that Appellants presented substantial evidence sufficient to overcome the presumption that the Fremont County Assessor's valuation of their personal property was correct and to find that the sales price of a mountain cabin located on federal land includes the value of the right to the federal lease?

II. Did the Fremont County Assessor correctly assess the valuation on Appellants' cabin according to applicable law as promulgated by the Wyoming Department of Revenue in its Rules and Regulations, and is her assessment contrary to constitutional right and privilege?

III. Did the Wyoming State Board of Equalization and the Ninth Judicial District Court fail to correct errors of law and fail to properly defer to the Findings of Fact, Decision and Order of the trier of facts in the first instance, the Fremont County Board of Equalization?

Appellee, Fremont County Assessor, rephrases the issues as follows:

1. Was the decision of the Fremont County Board of Equalization supported by substantial evidence or in the alternative was the decision of the Fremont County Board of Equalization arbitrary and capricious for other reasons?

2. Did the Fremont County Assessor fail to follow applicable Wyoming Department of Revenue rules and regulations?

3. Does the assessment violate a constitutional right or privilege?

## FACTS

[¶ 3] In 1995, Mr. and Mrs. Britt purchased a cabin in the Shoshone National

Forest west of Dubois, Wyoming for $80,000. The cabin is located on approximately one quarter of an acre of United States Forest Service land, identified as Lot D of the Pinnacle Heights tract. The cabin was built in 1944. The main structure is 690 square feet (23 × 30). It has two porches. The cabin has electricity, wood fueled heat, and running water during warm weather.

[¶ 4] The Britts hold a special use permit with the Forest Service which allows them to have a recreational residence where their cabin is located.[1] The permit includes a number of restrictions on the use of the cabin and the area. The Britts' permit is for a term of ten years and is scheduled to expire in 2008. They previously renewed the permit without difficulty. In 2003, the Britts paid an annual fee to the Forest Service of $2,349.53 for the special use permit.

[¶ 5] For the 2003 tax year, the Fremont County Assessor (Assessor) valued the cabin at $87,200. This assessment was based upon use of the Computer Assisted Mass Appraisal (CAMA) system. The assessment notice was sent to the Britts on April 23, 2003. The estimated taxes for 2003 of $644.91 were noticeably higher than the taxes assessed in the preceding years. For the years 2000, 2001, and 2002, the assessed taxes were $395.09, $413.38, and $417.12, respectively.

[¶ 6] On May 23, 2003, the Britts filed a *pro se* statement contesting the assessment, which provided, in part:

> We met with the assistant assessor and the assessor on May 20, in protest of the 52% increase in the property taxes we were paying on a cabin we owned that is located on a special use permit in the Shoshone National Forest. Initially, we felt that the increase was far too much, but after talking with the assessor, we feel we should not be assessed ANY PROPERTY TAXES at all on this lease. We own NO property; rather we have the right to lease a lot on the Shoshone National Forest and we pay a large yearly lease fee. Our lease comes up for renewal on a ten

year basis and we may loose [sic] the right to use the lot in 2008. We were told there was no record of our 1995 purchase of the cabin because it was NOT A PROPERTY TRANSACTION. That is true. We purchased the right to have a special use permit assigned from Bev Jones to Tim and Janet Britt. The price we paid, $80,000, was primarily for the consent by the U.S. Forest Service to amend the special use permit to allow the Britt family the right to use the Lot D, Pinnacle Heights Recreation Area. When we purchased the cabin, it was a one room cabin with partitions for bedrooms, heated by a wood stove and no bathroom facilities and would be appraised for a minimal amount as a stand alone building. We are in the process of having the cost of a replacement cabin figured. If we are assessed taxes at all, it should be on the personal property value of the cabin, not on the fact that the cabin is located in a scenic area.

> Additionally, the special use permit which covers the recreational use of the cabin is very restrictive and bears no resemblance to the rights of a person who owns land and buildings in fee has. We cannot increase the size of the cabin larger than 1200 square feet including porches; we cannot rent the cabin; we cannot live in the cabin as a home, we cannot paint the cabin nor have anything done to the cabin without the express permission of the forest service, the owner of the land. Our decision to spend $80,000 in 1995 to purchase the right to the recreational lease on Lot D, Pinnacle Heights was based on the value judgment that the area around the cabin would not be subject to massive subdivision, roading, habitat degradation, conversion or major human intrusion. The cabin itself is a minimal structure of very little monetary value and assessing its value based on what the assessment of a similar cabin on fee land in the Dubois area would be worth is not a valid assessment and is not comparable in any manner.

---

1. The right of the Britts to have their cabin located on Forest Service land is also referred to as a lease by the parties and the county board. For purposes of this opinion, the terms "special use permit" and "lease" are interchangeable. We use the former term because that is the term which appears in the agreement with the Forest Service.

The Britts based their challenge on the belief that they were being taxed for their special use permit:

> ... We do NOT own the land; we lease it. You cannot charge us property taxes on land we don't own nor base the value of personal property (the cabin) on where it happens to be located. You can only base personal property taxes on the intrinsic value of that object, whether it is a desk, table or cabin that may be moved.

[¶ 7] The county board held a hearing on July 14, 2003. At the hearing, the Britts and the Assessor submitted exhibits in support of their positions. The Britts provided a copy of their special use permit along with a summary of the restrictions imposed, a 1997 Forest Service appraisal of the value of that permit, their estimated calculation of the present value of the permit, a construction estimate for a new cabin, and a summary of their position. The Assessor provided exhibits regarding comparable properties used for sales comparison, a realty listing for the Britts' cabin with an asking price of $149,000, the Wyoming Department of Revenue regulation defining fair market value, and a summary of the Assessor's methodology and position.

[¶ 8] Mr. Britt testified at the hearing and presented several challenges to the Assessor's valuation. He asserted that a significant portion of the purchase price of his and similar cabins was attributable to the permit and should not be taxed. He estimated that when he purchased the cabin for $80,000, that $50,000 of that amount was attributable to the permit. Mr. Britt also emphasized the limited rights associated with his permit. He argued that the cabin was a structure not tied to the land and contended that its location should not be a consideration in the value. He also claimed that the Assessor erred by failing to consider the recent sale of a nearby cabin in her valuation and asserted that the cost approach was a more appropriate valuation method.

[¶ 9] Deputy County Assessor Tara Berg, a certified property tax appraiser, also testified. She described three sales of cabins in the area which were used as comparable sales. She testified:

> The above sales that we've just talked about indicate the market for cabins on forest service leases. We do not assess any of the leases that go with this property; they are separate. We assess the market value of the cabin as it would sell on the open market. If the cabin owners owned the land that the cabin was sitting on, the market value would likely be higher. In other words, if their ... bundle of rights was complete, ... their market value would increase.

[¶ 10] Berg emphasized the definition of fair market value and testified, "In this instance, buyers are willing to purchase a cabin only on a forest service lease and ... that's denoted by the sales there ... for between $80,000 and $215,000. These sales establish a fair market value for these cabins. These properties are value[d] as all other improvements in Fremont County." Regardless of the ownership of the land, she clarified that through the CAMA system, all buildings attached to land are valued as improvements. She further stated, "The location of the property is a very important factor when determining market value." She explained that proximity to recreational areas within the county tends to increase market value.

[¶ 11] Moreover, Berg explained that fair market value was preferable to replacement cost value because, as the Britts' efforts to sell the cabin through a realtor and advertising demonstrated, an open and active market exists for these cabins. Berg also explained why the limited rights associated with use of the cabin should not detract from the fair market value. She asserted that buyers are very aware of the limitations, and a transfer of the permit requires that the transferee of the cabin receive a copy of those restrictions.

[¶ 12] The county board also heard from the County Assessor, Eileen Oakley, who reiterated many of the points asserted by Berg. The Assessor stated that she did not factor in the amounts paid to the Forest Service for the permit in arriving at the cabin's fair market value. She agreed with the Britts that they were paying a great deal to the Forest Service for their permit, but she maintained that those fees established a

value for the permit distinct from the cabin structure. The Assessor also emphasized that the value of the permit was not being taxed.

[¶ 13] The county board issued a brief written decision which provided:

### FINDINGS OF FACT

1. The taxpayer testified that a cabin adjacent to his land had been sold within the last year for $50,000.

2. The taxpayer testified that he did not believe the comparable sales used by the Fremont County Assessor were realistic.

3. The subject property is a cabin located on a Forest Service lease. The cabin is a 23 × 30 foot structure with a porch approximately 10 × 23. There is no heat, water or electricity.

4. The taxpayers purchased the cabin for $80,000.00.

5. At hearing a debate ensued over whether the Assessor was taxing the value of the lease as well as the value of the cabin itself.

6. The Fremont County Assessor testified that the value of the lease with the United States Forest Service was not being taxed. However, the Assessor further testified that one of the reasons the value was high was due to the location of the cabin.

7. The Board finds that but for the location of the cabin, the fair market value of the cabin would be minimal as it is a very old cabin in very poor shape.

8. The Board believes the taxpayer is being assessed in part for the value of the Forest Service lease which is valuable because of the location of the cabin as a vacation spot.

9. The taxpayer testified that this cabin is used on a limited basis.

10. The Board finds that the taxpayer has presented sufficient, credible evidence to overcome the presumption that the Assessor's valuation was valid.

### DECISION AND ORDER

The Board finds generally in favor of the taxpayers, Janet and Tim Britt, and finds they should be given relief consistent with this decision.

[¶ 14] The Assessor appealed to the State Board of Equalization (state board). The state board, in its appellate capacity, reviewed the record of the hearing and the decision of the county board. The Britts did not submit a brief in support of the county board's decision. The state board issued its Decision and Order on April 6, 2004, reversing the county board's decision and reinstating the Assessor's valuation. The state board determined that the findings and the decision of the county board were not supported by substantial evidence and that the decision was arbitrary, capricious, and not in accordance with law.

[¶ 15] The Britts then filed a petition for writ of review of administrative action in the district court in Fremont County. The district court affirmed the decision of the state board. This appeal followed.

### STANDARD OF REVIEW

[¶ 16] We review administrative action pursuant to Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2005) of the Wyoming Administrative Procedure Act, which provides in pertinent part:

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

. . .

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

... or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

 [¶ 17] We recently described the principles guiding our review in *BP America Production Co. v. Dept. of Rev.*, 2005 WY 60, ¶¶ 10–13, 112 P.3d 596, 602–603 (Wyo.2005):

We review both the agency's findings of fact and law:

"Considerable deference is accorded to the findings of fact of the agency, and this Court does not disturb them unless they are contrary to the *overwhelming* weight of the evidence. *Amoco Production Co. v. Wyoming State Bd. of Equalization*, 12 P.3d 668, 671 (Wyo.2000). An agency's conclusions of law can be affirmed only if they are in accord with the law. *Id.* at 672. Our function is to correct any error that an agency makes in its interpretation or application of the law."

*EOG Resources, Inc. v. Wyoming Dep't of Revenue*, 2004 WY 35, ¶ 12, 86 P.3d 1280, [1284] (Wyo.2004).

. . .

"The district court and this Court are charged with reviewing an agency's decision for substantial evidence. That duty requires a review of the entire record to determine if there is relevant evidence that a reasonable mind might accept in support of the agency's decision. . . ."

*McTiernan v. Scott*, 2001 WY 87, ¶ 16, 31 P.3d 749, [756] (Wyo.2001) (citations and footnote omitted).

. . .

Findings of ultimate fact are reviewed de novo:

"When an agency's determinations contain elements of law and fact, we do not treat them with the deference we reserve for findings of basic fact. When reviewing an 'ultimate fact,' we separate the factual and legal aspects of the find-

ing to determine whether the correct rule of law has been properly applied to the facts. We do not defer to the agency's ultimate factual finding if there is an error in either stating or applying the law."

*Basin Elec. Power Co-op., Inc. v. Dep't of Revenue, State of Wyo.*, 970 P.2d 841, 850–51 (Wyo.1998) (citations omitted).

The party asserting an improper valuation method bears the burden of proof. *Amoco Production Co. v. Wyoming State Bd. of Equalization*, 899 P.2d 855, 858 (Wyo.1995). In reviewing a valuation method, the task of the appellate court is not to determine which of various appraisal methods is best or most accurately estimates fair market value. The reviewing court only determines whether substantial evidence exists to support use of the chosen method. *Id.*

Additionally, we afford no deference to the appellate review conducted by the state board or by the district court. *Laramie County Bd. of Equalization v. Wyoming State Bd. of Equalization*, 915 P.2d 1184, 1188 (Wyo.1996). We conduct an independent inquiry into the matter, just as if it had proceeded directly to us from the agency. *Wyoming Dept. of Revenue v. Guthrie*, 2005 WY 79, ¶ 11, 115 P.3d 1086, 1091 (Wyo.2005).

## DISCUSSION

 [¶ 18] Generally, challenges to the valuation of property for the purpose of *ad valorem* tax assessment are rooted in Wyo. Const. art. 15, § 11. *Holly Sugar Corp. v. State Bd. of Equalization*, 839 P.2d 959, 963–964 (Wyo.1992). That provision, as amended, provides in relevant part:

(a) All property, except as in this constitution otherwise provided, shall be uniformly valued at its full value as defined by the legislature, in three (3) classes as follows:

(i) Gross production of minerals and mine products in lieu of taxes on the land where produced;

(ii) Property used for industrial purposes as defined by the legislature; and

(iii) All other property, real and personal.

...

(d) All taxation shall be equal and uniform within each class of property.

We have interpreted Wyo. Const. art. 15, § 11 to require only a rational method of appraisal, equally applied to all property, which results in essential fairness. *Holly Sugar Corp.*, 839 P.2d at 964.

[¶ 19] The legislature has directed that "[a]ll property within Wyoming is subject to taxation as provided by this act except as prohibited by the United States or Wyoming constitutions or expressly exempted by W.S. 39–11–105." Wyo. Stat. Ann. § 39–11–103(a)(i) (LexisNexis 2005). For *ad valorem* taxes, taxable property is to be valued annually at its fair market value. Wyo. Stat. Ann. § 39–13–103(b)(ii) (LexisNexis 2005). Fair market value is defined as "the amount in cash, or terms reasonably equivalent to cash, a well informed buyer is justified in paying for a property and a well informed seller is justified in accepting, assuming neither party to the transaction is acting under undue compulsion, and assuming the property has been offered in the open market for a reasonable time...." Wyo. Stat. Ann. § 39–11–101(a)(vi) (LexisNexis 2005). The Department of Revenue is required to "prescribe by rule and regulation the appraisal methods and systems for determining fair market value using generally accepted appraisal standards." Wyo. Stat. Ann. § 39–13–103(b)(ii).

[¶ 20] Pursuant to that statutory direction, the Department of Revenue has promulgated regulations providing for four appraisal methodologies: the sales comparison approach, the cost approach, the income or capitalized earnings approach, and the computer assisted mass appraisal (CAMA) automated system approach. DOR Rules and Regs, Chap. 9, § 6. The County Assessor is required to "[f]aithfully and diligently follow and apply the orders, procedures and formulae of the department of revenue ... for the appraisal and assessment of all taxable property." Wyo. Stat. Ann. § 18–3–204(a)(ix) (LexisNexis 2005).

[¶ 21] The Forest Service land where the cabin is located is exempt from taxation as federal land used primarily for a governmental purpose. Wyo. Stat. Ann. § 39–11–105(a)(i) (LexisNexis 2005). However, improvements placed on federal lands for private use do not fall within this exemption. Wyo. Stat. Ann. § 39–11–105(a)(i)(A) (LexisNexis 2005). Of particular concern in this case is the special use permit which the parties agree is not taxable. See DOR Rules and Regs, Chap. 14, § 14(e) (leaseholds on exempt government property are not taxable to the lessee).

### Evidentiary basis for the county board's findings

[¶ 22] The Britts claim that the county board's decision in their favor was supported by substantial evidence. Most of the county board's findings are not pertinent to our review because they are inaccurate, incomplete, or merely restate testimony or issues without explaining how these items impacted the county board's decision.[2] The county

---

2. Finding No. 1 describes Mr. Britt's testimony about a recent nearby sale. Mr. Britt did state that a cabin next to his had sold within the past year for $50,000. Standing alone, this finding accurately represents a portion of Mr. Britt's testimony. However, what is lacking from the county board's finding is Mr. Britt's further explanation of the circumstances of that adjacent cabin sale. He explained that the neighboring cabin had previously sold for $87,000 right before the Britts had purchased their cabin. He acknowledged that the recent sale resulted from bankruptcy proceedings and that the lienholder sold that cabin for much less than the purchase price previously paid. Furthermore, he described that cabin, at the time of the recent sale, as being in a cosmetically poor condition.

Finding No. 2 also describes Mr. Britt's testimony. Mr. Britt did not clearly state that the comparable sales used by the Assessor were unrealistic. Rather, he suggested that the recent adjacent cabin sale would be more realistic than the comparables used by the Assessor because of the impact the events of September 11, 2001 recently had on the economy. This is simply a statement of the taxpayer's opinion, and the county board fails to describe how this opinion bore upon its decision.

Likewise, Finding No. 9 describes Mr. Britt's testimony that the cabin was used on a limited basis, but this fact was not disputed by the Assessor. The condition, desirability, and utility in the market place were factors specifically incorporated into her appraisal.

Finding No. 3 describes the physical features of the cabin but it is not entirely accurate. Mr. Britt testified that the cabin was 23 feet by 30 feet, with a porch on the south measuring 8 feet

board's resolution of the matter is essentially found in findings No. 7 and 8, and its ultimate conclusion in finding No. 10. With regard to these findings, the Britts assert that the county board's conclusion that their special use permit was being taxed was supported by substantial evidence. They also claim that substantial evidence supported the determination that they overcame the presumption that the Assessor's valuation was correct. We disagree and find that substantial evidence did not support the finding that the permit was taxed or the ultimate finding that the Britts had presented sufficient credible evidence to merit relief.

[¶ 23] A strong presumption favors the Assessor's valuation. "In the absence of evidence to the contrary, we presume that the officials charged with establishing value exercised honest judgment in accordance with the applicable rules, regulations, and other directives that have passed public scrutiny, either through legislative enactment or agency rule-making, or both." *Amoco Production Co. v. Dept. of Revenue*, 2004 WY 89, ¶ 7, 94 P.3d 430, 435 (Wyo.2004). The Britts had the initial burden of presenting evidence sufficient to overcome the presumption. *Id.*, ¶ 8. If the Britts successfully overcame the presumption, then the county board was "required to equally weigh the evidence of all parties and measure it against the appropriate burden of proof." *CIG v. Wyoming Dept. of Revenue*, 2001 WY 34, ¶ 10, 20 P.3d 528, 531 (Wyo.2001). The burden of going forward would then have shifted to the Assessor to defend her valuation. *Id.* Above all, the Britts bore "the ultimate burden of persuasion to prove by a preponderance of the evidence that the valuation was not derived in accordance with the required constitutional and statutory requirements for valuing ... property." *Id.*

by 23 feet. However, Mr. Britt also stated there was a screened in porch on the front of the cabin measuring 8 feet by 10 feet. The front porch is not mentioned by the county board. Moreover, Mr. Britt testified that the cabin does have electricity and also has water on a seasonable basis. Thus, the county board's finding that "[t]here is no ... water or electricity" clearly contradicts the evidence presented.

*a) Taxation of the Forest Service special use permit*

[¶ 24] Mr. Britt's chief complaint was that the Assessor's value improperly included the value of the rights under the special use permit. He asserted that the value of improvements should not be related in any way to the location of those improvements. The Britts contend that because the Assessor admitted that location was a factor in her valuation, the special use permit was impermissibly subject to taxation.

[¶ 25] The Assessor, however, was able to draw a distinction between location and land ownership. According to the Assessor, location is an appropriate consideration in determining fair market value. The Assessor presented testimony that the permit was not being taxed and that if the Britts actually owned the land, that the assessment would have been much higher. Berg explained that the value of improvements is affected by location and such variations in value, due to location, are not unusual. Other than their opinion that location should not be a factor in valuing their cabin, the Britts did not present any evidence which would have allowed the county board to find that the Assessor's consideration of the location of the cabin was inappropriate.

[¶ 26] Mr. Britt also claimed that the Assessor erred in failing to subtract the value of the federal permit from the assessed valuation. He attributed $50,000 of his original $80,000 paid for the cabin to the value of the special use permit. He offered an exhibit detailing payments to the Forest Service since their purchase of the cabin in 1995. The permit fee increased over time, from $937.02 in 1995 to $2,349.53 in 2003. Based upon the increase in the permit fee, the Britts estimated the permit value at $52,955 for the 2003 tax year. Mr. Britt suggested that this amount should be deducted from

Finding No. 4 omits the date when the cabin was purchased, but the purchase price of the cabin was not in dispute. Even if the date had been included, however, it does not appear that this finding was influential in the county board's decision.

Findings No. 5 and 6 simply summarize the main dispute at the hearing.

the Assessor's valuation to arrive at the real taxable value of his cabin, which he claimed was $34,245.

[¶ 27] On appeal, the Britts urge us to accept their estimated real taxable value as evidence sufficient to uphold the county board's decision in their favor. However, the county board did not expressly adopt the Britts' suggested approach, nor did it find that the taxable value of the cabin · was $34,245. We simply cannot tell from its findings whether the county board intended to follow this rationale. The county board did not make a finding about the fair market value of the cabin, other than to say its value was "minimal." Also lacking is any finding about the value of the special use permit. In the absence of such findings, and without any explanation from the county board about the relief it intended to grant, we cannot assume that its relief was based upon the cabin being valued at $34,245.

[¶ 28] The county board's statement that it believed the permit was being taxed was contrary to the weight of the evidence. In their testimony, Berg and the Assessor denied that the special use permit was being taxed. Without explanation, the county board apparently disregarded this testimony. The only conflicting evidence presented was the Britts' opinion that the permit was being taxed. A mere difference of opinion as to value does not amount to substantial evidence. *Amoco Production Co.*, ¶¶ 7–8. The county board erroneously concluded that the Assessor's valuation was improper because it included the value of the permit.

*b) Presumption favoring Assessor's valuation*

[¶ 29] At the hearing, the Britts attempted to prove that the value of the cabin was much lower than the Assessor's valuation. They questioned the methodology used by the Assessor and offered alternative means of valuing the cabin. The Assessor countered each challenge and explained why her valuation should stand. The county board ruled generally in favor of the Britts and found that they had presented sufficient evidence to overcome the presumption that the Assessor's valuation was valid.

[¶ 30] From its limited findings, we cannot tell which, if any, of Mr. Britt's challenges supplied the basis for the county board's decision. The county board did not make the requisite findings to allow deferential review of this ultimate conclusion. *CIG*, ¶ 8 (recognizing that we do not give the same deference afforded for basic fact findings if an agency's determinations involve elements of law and fact, or ultimate facts). Based upon our review of the evidence presented, we conclude that the Assessor successfully defended her valuation and the Britts failed to overcome the presumption that her valuation was proper.

[¶ 31] The Britts challenged the Assessor's use of comparable sales. Mr. Britt did not deny that sales of other cabins had taken place or that those cabins were comparable to his cabin. He merely asserted that the market had slowed since those transactions had occurred. As an example, Mr. Britt identified a recent transaction which he thought should have been considered. However, that cabin sale resulted from a lien foreclosure. Mr. Britt acknowledged that, because of those circumstances, the price of $50,000 was much lower than the amount previously paid for the same property. He also recognized that his cabin was in better condition. Berg explained that the transaction referenced by Mr. Britt was not used because the condition of that cabin was not comparable to the Britts' cabin and to the other cabin sales used as comparables. Additionally, Mr. Britt emphasized that his use of the cabin was severely limited by the terms of the permit. However, the Assessor stated that those limitations were considered. All of the comparables used were likewise located on U.S. Forest Service land, involved the same type of permit, and were subject to similar limitations.

[¶ 32] Mr. Britt also suggested that the Assessor should have utilized the cost replacement method. He submitted a construction estimate in an effort to demonstrate that the replacement cost of the cabin was approximately $65,000. He acknowledged that the information used for the estimate differed from the cabin's actual dimensions. The estimate was based

upon construction of a 650 square foot cabin without including the cost of any porches, while the main structure of the Britts' cabin, exclusive of the porches, measured 690 square feet. As the Assessor explained, this $65,000 figure is only a base cost figure, which must be depreciated and adjusted for specific characteristics of the structure, in order to arrive at the cost value. Mr. Britt did not provide information beyond the base cost figure. He did not offer any depreciation schedule or suggest a value which represented the replacement cost minus depreciation, pursuant to the cost approach method authorized by Department of Revenue regulation. DOR Rules and Regs, Chap. 9, § 6.

[¶ 33] More significantly, the appraisal method used by the Assessor did take into account the replacement cost value of the cabin. She testified that the cost value was considered as a component of the CAMA value. In further defense of her use of CAMA, the Assessor also presented testimony that the CAMA approach was uniformly used to value all buildings in Fremont County, regardless of ownership of the underlying property.

[¶ 34] Based upon the record, the Britts' asserted challenges to the assessment value did not establish by a preponderance of evidence that the Assessor's valuation was improper. The presumption of validity that attached to the Assessor's valuation could only be overcome by credible evidence. *Amoco Production Co.*, ¶¶ 7–8. The Britts failed to present sufficient credible evidence to show that the Assessor's valuation was invalid. Their mere difference of opinion as to the value of their cabin was not sufficient to satisfy their burden. *Id.* Although the burden of persuasion did not rest with the Assessor, we find that she presented ample evidence in defense of her valuation. Accordingly, the county board's decision in favor of the Britts was erroneous and the Assessor's valuation was properly reinstated by the state board.

*Appraisal method authorized by law*

[¶ 35] Alternatively, the Britts assert that the Assessor's valuation should have been set aside because her methodology was contrary to applicable law. They argue that the Assessor should have used the cost approach and that her use of the comparable sales approach under the circumstances was not a rational method, was not uniformly applied, and was not essentially fair.

[¶ 36] The Britts claim that the Assessor was not authorized to use the comparable sales approach pursuant to Section 6(a) of Chapter 9 of the Department of Revenue's regulations, which provides in pertinent part:

> The comparable sales approach is an appropriate method of valuation when there is an adequate number of reliable arms-length sales and the properties subject to such sales are similar to the property being valued. Comparable sales shall be adjusted to reflect differences in time, location, size, physical attributes, financing terms or other differences which affect value. The use of this approach to value depends upon:
>
> (i) The availability of comparable sales data;
>
> (ii) The verification of the sales data;
>
> (iii) The degree of comparability or extent of adjustment necessary for time differences; and
>
> (iv) **The absence of non-typical conditions affecting the sales price.**

DOR Rules and Regs, Chap. 9, § 6(a) (emphasis added). Additionally, the Britts claim that the Assessor failed to select an appropriate appraisal method, citing the following principles:

> Each approach used shall be an appropriate method for the type of property being valued; that is, the property shall fit the assumptions inherent in the appraisal method in order to calculate or estimate the fair value of the property. Each approach used shall also consider the nature of the property or industry, and the regulatory and economic environment within which the property operates. For personal property, the valuation methodology selected shall reflect the trade level at which personal property is found, **and shall account for factors influencing the value**

**in place including utility, usefulness to the owner** or the actual income produced. DOR Rules and Regs, Chap. 9, § 6 (emphasis added).

[¶ 37] The Britts argue that, under these regulations, two circumstances were present which precluded the use of the comparable sales method: 1) non-typical factors affecting sales price and 2) the limited usefulness to the owner. First, the Britts claim that the Assessor failed to consider the value of the special use permit which they contend was a major non-typical factor. Second, they assert that the Assessor failed to consider the limited usefulness of the cabin resulting from the restrictions under the special use permit. Consequently, the Britts conclude that the Assessor should have used the cost approach.

[¶ 38] It is not a function of our review process to consider, among several valid appraisal approaches, which method might be most favorable to the taxpayer. *CIG*, ¶ 13. As we have already noted, the Britts failed to present sufficient evidence at the hearing which would support application of the cost approach pursuant to the Department's Rules and Regulations. The Britts' construction estimate provided only the first step in determining cost value, and they provided no information about depreciation or deductions.[3] Furthermore, the Britts' estimate was not based upon "accurate, pertinent physical data regarding the property" as required by the regulations. DOR Rules and Regs, Chap. 9, § 6(b)(ii). Their estimate for a new structure was based upon less square footage and did not account for the two porches on the existing cabin.

[¶ 39] More significantly, however, the Britts fail to recognize that the comparable sales approach was not the method used by the Assessor. Instead, she used CAMA, which automates the comparable sales and replacement cost methods. *Gray v. Wyoming State Bd. of Equalization*, 896 P.2d 1347, 1350, f.n.2 (Wyo.1995). We have approved of the CAMA system as a rational

method which can be uniformly and fairly applied. *Id.* at 1351. The Britts do not challenge the CAMA method, nor do they clearly assert that the Assessor employed CAMA improperly.[4]

[¶ 40] Insofar as the Britts' complaints about the comparable sales approach translate to complaints about the CAMA valuation, we find no error in the comparable sales component of the Assessor's CAMA analysis. The comparable sales used by the Assessor were limited to cabins similarly situated on nearby Forest Service land without fee ownership, subject to similar use restrictions. Thus, the value of the right to have a cabin located on Forest Service land was a factor which was typical, not atypical.

[¶ 41] The Assessor did consider the utility of the cabin and applied a factor in the CAMA analysis. The Britts do not explain how their claimed limited usefulness of the cabin impacts its value in a way which was not considered by the Assessor. The evidence indicates that buyers of cabins located on Forest Service special use permits are aware of the limitations and restrictions, and, as the Assessor observed, there is an active market for these cabins with buyers willing to pay for even limited use.

[¶ 42] The Assessor presented evidence that she considered actual market conditions and weighed that information against other indications of value before selecting the assessment value. This was consistent with her obligation pursuant to Section 7 of Chapter 9 of the Department's Rules and Regulations, which provides:

> The appraiser shall weigh the relative significance, applicability and appropriateness of the indications of value derived from the approaches to value or methods outlined above, and will place the most weight and reliance on the value indicator which, in his professional judgment, best approximates the value of the subject property. The appraiser shall evaluate all alternative conclusions and reconcile the value indicators to arrive at a final estimate of value. For

---

3. We note that the cost-per-square-foot estimate submitted by the Britts represents a less reliable method of estimating replacement cost. DOR Rules and Regs, Chap. 9, § 6(b)(v)(C).

4. CAMA is authorized by Section 6(d) of Chapter 9 of the Department's Rules and Regulations which is not cited by the Britts.

market value, the final estimate is that value which most nearly represents what the typical, informed, rational purchaser would pay for the subject property and a rational seller would accept if it were available for sale on the open market as of the date of the appraisal, given all the data utilized by appraisers in their analyses. We conclude that the Assessor demonstrated that she considered all necessary factors and exercised professional judgment in accordance with applicable law. We, therefore, will not substitute our judgment by finding that a different appraisal method would have been more suitable.

[¶ 43] The Britts also claim that the Assessor's method of valuation was contrary to constitutional right and privilege. We disagree. CAMA conforms to the equal and uniform taxation requirements of the Wyoming Constitution. *Gray,* 896 P.2d at 1351. Nevertheless, the Britts claim that their valuation was the result of an irrational method, not uniformly applied, which is not essentially fair. Their argument is basically a reiteration of their arguments addressed above—that the value of the special use permit was assessed and that the cost approach was more suitable. We have rejected these assertions, and we conclude that the Assessor's valuation was not constitutionally infirm.

### Deference to the fact finder

[¶ 44] In their final issue on appeal, the Britts argue that the state board and district court failed to defer to the county board as the initial finder of fact. Having conducted our own appellate review and concluding that the county board's findings were not supported by substantial evidence, we need not address any perceived errors in the methods or reasoning of the state board or district court.

### CONCLUSION

[¶ 45] In the absence of substantial evidence to support it, the county board's decision cannot be upheld. The county board's finding that the federal special use permit was being taxed was clearly contrary to the evidence presented at hearing. Likewise, substantial evidence did not support its finding that the Britts overcame the presumption of correctness of the Assessor's valuation. We conclude that the Assessor's appraisal methodology was authorized by law and was in accordance with constitutional guidelines. Accordingly, the state board correctly reversed the county board's decision, and the district court properly upheld the decision of the state board.

[¶ 46] Affirmed.