# THE SUPREME COURT, STATE OF WYOMING

## 2023 WY 116

OCTOBER TERM, A.D. 2023

December 5, 2023

JAN CHARLES GRAY,

**Appellant**
**(Petitioner),**

v.

**CONVERSE COUNTY ASSESSOR,**

**Appellee**
**(Respondent).**

S-22-0273, S-23-0057

*Appeal from the District Court of Converse County*
*The Honorable Richard L. Lavery, Judge*

*Representing Appellant:*
    *Jan Charles Gray, pro se.*

*Representing Appellee:*
    Quentin W. Richardson, Converse County Attorney's Office, Douglas, Wyoming.

*Before FOX, C.J., and DAVIS, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FENN, Justice.**

[¶1]     Jan Gray owns 115 lots of vacant land in the Sunup Ridge subdivision in Converse County, Wyoming.  He appeals the Converse County Board of Equalization's decisions upholding the Converse County Assessor's tax assessments of those vacant lots for 2016, 2017, 2018, and 2020.  We affirm.

## ISSUES

[¶2]     The issues on appeal are:

I.      Did the Converse County Assessor physically inspect Mr. Gray's properties in accordance with law?

II.     Are the County Board of Equalization's decisions upholding the 2016, 2017, 2018, and 2020 tax assessments supported by substantial evidence?

III.    Did the County Board of Equalization provide an adequate record on appeal?

IV.     Was Mr. Gray denied an opportunity to conduct discovery?

## FACTS

[¶3]     Jan Gray owns 115[1] lots of vacant land in the Sunup Ridge subdivision in Converse County, Wyoming, that are the subject of this appeal.  All the lots have infrastructure for water, roads, and sewage.  In 2016, the Converse County Assessor (County Assessor) valued Mr. Gray's lots for property tax purposes at $3.30 per square foot.  In 2017 and 2018, the County Assessor valued those same lots at $3.50 per square foot.  In 2020, the County Assessor valued the lots at $4.00 per square foot; however, the County Assessor made a downward adjustment on two of the lots for the topography of the lots and the ability to build, reducing the taxable value to $3.49 per square foot for one lot and $3.80 per square foot for the other one.

[¶4]     Mr. Gray appealed the County Assessor's tax assessments for 2016, 2017, 2018, and 2020 to the Converse County Board of Equalization (County Board).  The County Board held a contested case hearing for each year and upheld all four years of tax assessments.  Mr. Gray appealed all four years to the State Board of Equalization and subsequently to the district court.  Both the State Board and the district court affirmed the

---

[1] The testimony from 2016, 2017, 2018, and 2020 hearings varied as to the number of lots Mr. Gray owns in the Sunup Ridge subdivision.  The most recent testimony from 2020 indicates he owns 115 lots.  The tax statements indicate Mr. Gray was assessed taxes on 115 lots in the Sunup Ridge subdivision.

County Board's decisions for all four years.  Mr. Gray timely appealed the County Board's decisions for years 2016, 2017, 2018, and 2020 to this Court.

## STANDARD OF REVIEW

[¶5]    Judicial review of the County Board's decisions are governed by Wyoming Statute § 16-3-114(c). *Eisele v. Town of Pine Bluffs,* 2020 WY 22, ¶ 9, 458 P.3d 46, 48–49 (Wyo. 2020).  On review we:

>    (i)    Compel agency action unlawfully withheld or unreasonably delayed; and
>
>    (ii)    Hold unlawful and set aside agency action, findings and conclusions found to be:
>
>        (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; [or]
>
>                    *    *    *
>
>        (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2021).  In making these determinations, this Court reviews the whole record and considers whether the County Board's decision results in prejudicial error. Wyo. Stat. Ann. § 16-3-114(c).

[¶6]    In this case, our review is focused on the County Board's decisions upholding the County Assessor's 2016, 2017, 2018, and 2020 tax assessments for Mr. Gray's real property. *Eisele*, 2020 WY 22, ¶ 10, 458 P.3d at 49.  "We do not defer to the decision of the State Board [of Equalization] or to that of the district court." *Id*.

> Since in this case the [C]ounty [B]oard was the finder of the fact and the state board heard no additional testimony, we will treat the state board as an intermediate level of review and accord deference only to the [C]ounty [B]oard's findings of fact.  [The] primary focus of our review [is] whether the [C]ounty [B]oard's decision was lawful and supported by substantial evidence.

*Id*. (quoting *Union Pac. R.R. v. Wyo. State Bd. of Equalization*, 802 P.2d 856, 859 (Wyo. 1990)).

[¶7]   We review the County Board's "conclusions of law *de novo* and affirm when they are in accordance with the law." *Solvay Chemicals, Inc. v. Wyo. Dep't of Revenue*, 2022 WY 122, ¶ 7, 517 P.3d 1123, 1127–28 (Wyo. 2022) (citing Wyo. Stat. Ann. § 16-3-114(c)(ii)(A)); *Eisele*, ¶ 9, 458 P.3d at 48–49.   We will uphold the County Board's "findings of fact if they are supported by substantial evidence in the record." *Solvay Chemicals, Inc.*, ¶ 7, 517 P.3d at 1148–49.   "We have long recognized that substantial evidence 'is more than a mere scintilla' of evidence; it is 'such relevant evidence as a reasonable mind might accept as adequate to support [the County Board's] conclusion.'" *Eisele*, ¶ 9, 458 P.3d at 49.   "A finding of fact is 'supported by substantial evidence if, from the evidence preserved in the record, we can discern a rational premise for it.'" *Bd. of Trustees of Lincoln Cnty. Sch. Dist. No. Two v. Earling*, 2022 WY 23, ¶ 34, 503 P.3d 629, 638 (Wyo. 2022).   If we find the record "contains sufficient evidence to support the [County Board's decision] under the substantial evidence test," we then apply "the arbitrary-and-capricious standard as a 'safety net' to catch other agency action that may have violated the Wyoming Administrative Procedures Act." *City of Rawlins v. Schofield*, 2022 WY 103, ¶ 21, 515 P.3d 1068, 1075–76 (Wyo. 2022) (quoting *Union Tel. Co. v. Wyo. Pub. Serv. Comm'n*, 2022 WY 55, ¶ 33, 508 P.3d 1078, 1090–91 (Wyo. 2022)).[2]

## DISCUSSION

[¶8]   "All property within Wyoming is subject to taxation . . . except as prohibited by the United States or Wyoming constitutions or expressly exempted by [Wyoming Statute §] 39-11-105[.]" Wyo. Stat. Ann. § 39-11-103(a)(i) (LexisNexis 2021).   On January 1 of each year, the county assessor lists, values, and assesses for taxation, in the name of the owner of the property, all taxable property located within its county that is not assessed by the Department of Revenue. Wyo. Stat. Ann. § 39-13-103(b)(i)(A) (LexisNexis 2021); Wyo. Stat. Ann. § 39-13-103(b)(vii) (LexisNexis 2021); § 39-13-102(m) (LexisNexis 2021). Sometime near the fourth Monday in April, the county assessor mails an assessment schedule to the taxpayer, or owner of the property, at their last known address. Wyo. Stat. Ann. § 39-13-103(b)(vii).   The assessment schedule "contain[s] the property's estimated fair market value for the current and previous year" along with "an estimate of the taxes which will be due and payable for the current year[.]" Wyo. Stat. Ann. § 39-13-103(b)(viii) (LexisNexis 2021).   If the taxpayer wishes to contest an assessment of his property, he is required to file with the county assessor a statement "specifying the reasons why the assessment is incorrect" within 30 days of the assessment schedule. Wyo. Stat. Ann. § 39-13-109(b)(i) (LexisNexis 2021).   A taxpayer's contest of an assessment will be set for a

---

[2] Mr. Gray proposes this Court apply a different standard of review based on substantial fairness.  We decline to address Mr. Gray's application of a substantial fairness test and summarily affirm on the issue because he has not presented cogent argument or cited to any authority supporting its application. *See Union Tel. Co.*, ¶ 22 n.8, 508 P.3d at 1088 n.8.

hearing before the county's board of equalization. *Id*.; Wyoming State Board of Equalization Rules and Regulations, Chapter 7, §§ 6(c), 7 (February 2, 2021).

[¶9]    Mr. Gray argues the County Board erred when it determined after a hearing that the County Assessor physically inspected his vacant lots in accordance with law and valued his lots at fair market value.  He also contends the County Board did not provide an adequate record on appeal, and he was not given an opportunity for proper discovery.

### I.   *The Converse County Assessor's Physical Inspection of the 115 Vacant Lots is in Accordance with Law.*

[¶10] The Wyoming Legislature is constitutionally mandated to "prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal." Wyo. Const. art. XV, § 11.  In determining the basis of tax for real property, the Wyoming Legislature designated the Department of Revenue to "prescribe by rule and regulation the appraisal methods and systems for determining fair market value using generally accepted appraisal standards." Wyo. Stat. Ann. § 39-13-103(b)(ii).  When determining the fair market value of real property, the Department of Revenue requires county assessors to "physically inspect all real properties within their jurisdiction at least once every six years." Wyoming Department of Revenue Rules and Regulations, *Property Tax Valuation Methodology and Assessment* (County Assessments), Chapter 9, § 3(c) (July 25, 2016).

[¶11]  Mr. Gray argues the County Assessor failed to physically inspect each of his 115 lots in accordance with Chapter 9, § 3(c) of the Department of Revenue's rules and regulations.  He argues the amount of time the County Assessor spent viewing the property did not allow her to individually assess the topography of each vacant lot in determining its fair market value.  The County Assessor contends she complied with the Department of Revenue's rules and regulations by physically inspecting the property within the required time frame and ensuring the characteristics of the lots remained unchanged.

[¶12]  The taxpayer appeal statements Mr. Gray filed for 2016, 2017, 2018, and 2020 did not assert the County Assessor failed to physically inspect his lots in accordance with the Department of Revenue's rules and regulations. Wyo. Stat. Ann. § 39-13-109(b)(i).  We limit our review to the matters specifically raised before the administrative agency, in this case the County Board. W.R.A.P. 12.09(a) (LexisNexis 2021); s*ee also Davenport v. State, ex rel., Wyo. Workers' Safety & Comp. Div.*, 2012 WY 6, ¶ 20, 268 P.3d 1038, 1043 (Wyo. 2012) ("The rule that a party cannot raise issues on appeal which were not argued below applies to administrative decisions.").  Although Mr. Gray failed to properly raise the inspection issue in his appeal statements, he raised the issue during his respective 2017, 2018, and 2020 contested case hearings without objection.  We therefore review this issue for 2017, 2018, and 2020. *See generally* W.R.A.P. 12.09(a); *Davenport*, 2012 WY 6, ¶ 20, 268 P.3d at 1043 (reviewing an issue raised during a closing argument at the contested case hearing).

[¶13] The Department of Revenue's applicable regulation provides:

> County Assessors shall physically inspect all real properties within their jurisdiction at least once every six years in order to assure the property characteristic data are correct. The Department may, if necessary, require a yearly plan from the assessor to assure compliance. Exempt properties shall be reviewed as deemed necessary by the assessor to assure the basis for the exemption remains valid and applicable.

Department of Revenue Rules and Regulations, *Property Tax Valuation and Methodology and Assessment (County Assessments)*, Chapter 9, § 3(c).

[¶14] During the 2017 contested case hearing, the County Assessor testified she individually looked at every lot in 2016. She testified she rode in a vehicle around Sunup Ridge and physically viewed all 115 lots to see if any structures had been erected on the lots. At the 2018 contested case hearing, the County Assessor testified an employee from the County Assessor's Office individually visited each of the 115 lots in 2014, and in 2016, she physically inspected the lots herself. In 2020, the County Assessor testified an employee from the County Assessor's Office physically inspected Mr. Gray's 115 lots in 2009, 2014, 2015, and 2016; she personally inspected the lots in 2016.

[¶15] The County Assessor testified the Department of Revenue does not provide direction on how to physically inspect a property. She stated she must physically look at the property every six years to ensure the characteristics of the property remain unchanged and verify that what is documented with the County Assessor's Office is correct. For vacant land, she looks at whether any structures have been built or amenities added, which could change the value of the property. The County Assessor testified she physically looked at Mr. Gray's lots in 2016 and determined his lots remained vacant with unchanged physical characteristics.

[¶16] "[We] defer to an agency's interpretation of its own rules and regulations unless that interpretation is clearly erroneous or inconsistent with the plain language of the rules." *Monaghan Farms, Inc. v. Bd. of Cnty. Comm'rs of Albany Cnty.*, 2023 WY 31, ¶ 12, 527 P.3d 1195, 1203 (Wyo. 2023). The plain language of the regulation indicates a county assessor must physically look at real property every six years to determine whether the property still has the same physical characteristics as previously documented by the county assessor's office. Department of Revenue Rules, Chapter 9, § 3(c). The County Assessor's interpretation is consistent with the plain language of the rule. Her testimony shows she physically viewed the 115 lots within the six-year time frame and determined there had been no changes to the physical characteristics of the vacant lots. The physical inspection of the property for 2017, 2018, and 2020 was in accordance with law.

***II. Substantial Evidence Supports the 2016, 2017, 2018, and 2020 Property Tax Assessments.***

[¶17] Mr. Gray contends the County Assessor's 2016, 2017, 2018, and 2020 tax assessments of his 115 lots "do[] not accurately reflect the fair market value of the property." The Wyoming Constitution mandates the Wyoming Legislature to value real and personal property equally and uniformly. Wyo. Const. art. XV, § 11(a), (d). All real property is required to "be annually valued at its fair market value." Wyo. Stat. Ann. § 39-13-103(b)(ii). The Department of Revenue "prescribe[s] by rule and regulation the appraisal methods and systems for determining fair market value using generally accepted appraisal standards." Wyo. Stat. Ann. § 39-13-103(b)(ii). To calculate the fair market value of residential land, the Department of Revenue recommends using the sales comparison approach. Department of Revenue Rules and Regulations, Chapter 9, § 5(b)(i). The use of the sales comparison approach to determine the land's fair market value depends upon: (1) the availability of comparable sales data; (2) the verification of the sales data; (3) the degree of comparability; and (4) the absence of non-typical conditions affecting the sales price. Department of Revenue Rules and Regulations, Chapter 9, § 5(b)(i). The sales comparison approach estimates the value of a subject property by statistically analyzing the sales prices of similar properties using an adequate number of sales. *IAAO Standards on Mass Appraisal of Real Property*, § 4.3. The Department of Revenue mandates the minimum number of comparable sales at five when using the sales comparison approach. Department of Revenue Rules and Regulations, Chapter 9, § 6(a)(i). In the absence of adequate vacant land sales, the Department of Revenue allows the county assessor to value the real property using other techniques, including the allocation, abstraction, anticipated use, and capitalization of ground rents methods. Department of Revenue Rules and Regulations, Chapter 9, §5(b)(i). The County Assessor's level of appraisal for vacant land within a land economic area—the geographic area encompassing a group of neighborhoods—is required to lie between a standard deviation of 0.90 and 1.10. Department of Revenue Rules and Regulations, Chapter 9, § 6(a)(iii).

**A. 2016 Tax Assessment**

[¶18] The County Assessor testified she made no change to the valuation of Mr. Gray's lots from 2015 to 2016 and valued Mr. Gray's lots at $3.30 per square foot. She testified in the Sunup Ridge land economic area there were sixteen comparable sales of vacant land from the previous three years (2013, 2014, and 2015). The County Assessor used all sixteen comparable sales to calculate the value of Mr. Gray's property and all other vacant land in the Sunup Ridge land economic area. This resulted in a median of $3.465. The County Assessor did not adjust the fair market value of the lots even though the value per square foot was set at less than the median of the sixteen comparable sales. The County Assessor testified she conservatively determined not to increase the value of the lots from

2015 to 2016, even though the sales comparison approach indicated she could increase the value, because her assessment fell within the standard deviation for the level of appraisal.

[¶19] The Wyoming Legislature adopted a presumption in favor of a valuation asserted by a county assessor. Wyo. Stat. Ann. § 39-13-109(b)(i). To rebut the presumption, Mr. Gray was required to present credible evidence that "is relevant, material or not repetitious, including expert opinion testimony[.]" *Id*.; *see also Britt v. Fremont Cnty. Assessor*, 2006 WY 10, ¶ 23, 126 P.3d 117, 125 (Wyo. 2006) (citation omitted) ("The [taxpayer] had the initial burden of presenting evidence sufficient to overcome the presumption. If the [taxpayer] successfully overcame the presumption, then the county board was 'required to equally weigh the evidence of all parties and measure it against the appropriate burden of proof.'"). Mr. Gray bears "the ultimate burden of persuasion to prove by a preponderance of the evidence that the valuation was not derived in accordance with the required constitutional and statutory requirements for valuing property." *Britt*, ¶ 23, 126 P.3d at 125. "The burden is on [Mr. Gray] to establish any [overvaluation]" by the County Assessor. *Hillard v. Big Horn Coal Co.*, 549 P.2d 293, 294 (Wyo. 1976)

[¶20] To overcome the presumption in favor of the County Assessor's valuation, Mr. Gray called Jared Rude, an individual who has bought and sold over 200 properties in Natrona and Converse Counties. Mr. Rude testified he was familiar with Mr. Gray's lots, and he believed the value of the lots decreased between ten to fifteen percent (10–15%) due to the oil and gas market declining. Mr. Rude testified his opinion as to the value of the lots was based on a "generalized feeling" due to what the economy was doing.

[¶21] This Court has held "[a] mere difference of opinion as to value does not amount to substantial evidence" to overcome the presumption in favor of the valuation. *Britt*, 2006 WY 10, ¶ 28, 126 P.3d at 126. The County Board found Mr. Gray presented insufficient evidence "to demonstrate that the valuations were incorrect or not according to law." Mr. Gray presented an expert witness who admittedly testified his opinion is based on a "generalized feeling." We find the County Board's decision for the 2016 tax assessment is supported by substantial evidence. *See Britt*, 2006 WY 10, ¶ 34, 126 P.3d at 127.

## B. 2017 Tax Assessment

[¶22] In 2017, the fair market value of the lots in Sunup Ridge, including Mr. Gray's lots, increased from $3.30 per square foot to $3.50 per square foot. The County Assessor testified she determined the fair market value of Mr. Gray's lots using the sales comparison approach. The County Assessor yielded a median price of $3.50 per square foot using the sales comparison approach and seven sales that occurred in 2014 and 2015. The County Assessor also calculated a median of $3.50 using only the 2015 sales, which were six of the seven sales. To verify her decision to increase the value of Mr. Gray's lots to $3.50 using the sales comparison approach, the County Assessor also computed the fair market value using the allocation method. The allocation method uses residential home sales

7

within the same land economic area and allocates a percentage of the sales price to the land value. The allocation method yielded a fair market value for Mr. Gray's lots at $3.87 per square foot. While the County Assessor did not value the lots using the allocation method, it supported her decision to increase the value of the lots to $3.50 per square foot.

[¶23] To rebut the County Assessor's valuation, Mr. Gray called Paul Richardson. Mr. Richardson was not a licensed appraiser, but he had a background in buying and selling real estate. Mr. Richardson opined the Sunup Ridge subdivision lots should have decreased in value by ten to fifteen percent (10–15%). However, he testified valuing the vacant lots was outside his area of expertise, so he reached out to other unidentified real estate agents to determine the value. The County Board determined Mr. Gray failed to present sufficient evidence to overcome the statutorily imposed presumption in favor of the County Assessor's valuation. We find the County Board's decision for the 2017 tax assessment is supported by substantial evidence. *See* Wyo. Stat. Ann. § 39-13-109(b)(i); *Britt*, 2006 WY 10, ¶ 34, 126 P.3d at 127.

### C. 2018 tax assessment

[¶24] The County Assessor did not adjust the fair market value of Mr. Gray's lots from 2017 to 2018 and assessed the fair market value of Mr. Gray's lots for 2018 at $3.50 per square foot. The County Assessor testified she used the sales comparison approach and all six vacant land sales that occurred in 2015, which yielded a median of $3.50 per square foot. Again, to validate her decision to assess the fair market value at $3.50 per square foot, the County Assessor also computed the fair market value using the allocation method. Examining both the sales comparison approach and the allocation method, the County Assessor concluded that no change in the valuation was appropriate.

[¶25] To overcome the presumption in favor of the County Assessor's valuation, Mr. Gray called himself to testify. Mr. Gray testified he valued his lots at $8,000 per lot based on a conversation with a contractor currently building on lots within Sunup Ridge. The County Board determined Mr. Gray presented insufficient evidence "to demonstrate that the valuations were incorrect or not according to law." The County Board specifically found that the evidence presented by Mr. Gray "was inadequate to demonstrate that any 'malice' exist[ed] in the valuation of the property." We find the County Board's decision for the 2018 tax assessment is supported substantial evidence. *See Britt*, 2006 WY 10, ¶ 34, 126 P.3d at 127.

### D. 2020 Tax Assessment

[¶26] In 2020, the County Assessor used the abstraction and allocation methods to determine the fair market value of Mr. Gray's vacant lots because there had not been a vacant land sale for five years. Both methods attempt to separate out the value of the vacant land from an improved land sale. *International Association of Assessing Officers, IAAO*

8

*Glossary for Property Appraisal and Assessment*, 2, 5–6, 89 (2d ed. 2013). The value of the vacant land using the abstraction method was above $5.00 per square foot. Using the allocation method, the County Assessor valued the vacant land at a median of $4.51 per square foot using an 18% allocation to the value of the land. The County Assessor calculated the fair market value of Mr. Gray's properties within the standard deviation at $4.00 per square foot to be as conservative as possible, which was below the allocation and abstraction values.

[¶27] Mr. Gray presented no cogent argument demonstrating how the County Assessor's valuation is not in accordance with law or not supported by substantial evidence. Instead of providing any argument relating to the 2020 testimony and evidence received by the County Board, Mr. Gray provided a copy and paste of the argument from his appellate brief regarding his 2016, 2017, and 2018 tax appeals. The argument in his brief contains no citation to the record for the 2020 contested case hearing, no cogent argument, and no relevant authority. We therefore decline to consider Mr. Gray's argument any further and summarily affirm the County Board's decision upholding the County Assessor's 2020 tax assessment. *WyoLaw, LLC v. Off. of Att'y Gen., Consumer Prot. Unit*, 2021 WY 61, ¶ 37, 486 P.3d 964, 975 (Wyo. 2021) (declining to consider an argument any further when there is no citation to relevant authority or cogent argument but instead was only argumentative assertions by the appellant); *Corrigan v. Vig*, 2020 WY 148, ¶¶ 6–7, 477 P.3d 87, 89 (Wyo. 2020) (summarily affirming when the appellant failed to provide any cogent argument supported by pertinent case law or providing any citations pointing this Court to the relevant portions of the record).

### III. The County Board Properly Transmitted the Administrative Record and Mr. Gray was Responsible for Making Arrangements to Pay for any Transcripts on Appeal

[¶28] Mr. Gray contends the County Board did not provide an adequate record on appeal. He argues the County Board did not include formal written transcripts as part of the record on appeal. Wyoming Statute § 39-13-109(b)(i) requires all tax appeal hearings to be conducted in accordance with the rules adopted by the State Board of Equalization, and appeal hearings to "be recorded electronically or by a court reporter or a qualified stenographer or transcriptionist." The State Board's rules and regulations require the record on appeal to contain the testimony from the contested case hearing. Wyoming State Board of Equalization Rules and Regulations, Chapter 3, §7(a)(vi) (2021). The State Board's rules and regulations further provide "[o]ral proceedings . . . shall be transcribed on request of any party upon payment of the cost therefore." *Id.* The State Board's notice to Mr. Gray provided: "If the County Board proceedings were tape recorded, a transcription will be made only if you as Petitioner make arrangements, otherwise the State Board will have only the tape recording from which to consider testimony."

[¶29]  We have reviewed the records for the 2016, 2017, 2018, and 2020 tax assessment appeals and all four records contain an audio/video recording of the hearing for each respective year.  We find the County Board acted in accordance with Wyoming Statute § 39-13-109(b)(i) by ensuring the contested case hearings were electronically recorded and all electronic recordings were included in the record.  If Mr. Gray wanted a transcript to be included in the record on appeal, or believed a transcript was necessary for appellate review, he was responsible for ordering and paying for a transcription of the testimony.  W.R.A.P. 12.04(d) (LexisNexis 2021) ("Concurrently with the filing of a petition for review. . . the party so filing shall order and arrange for the payment for a transcript of the testimony necessary for the appeal."); *Depiero v. Bd. of Cnty. Comm'rs, Lincoln Cnty.*, 2022 WY 42, ¶ 14, 506 P.3d 771, 774–75 (Wyo. 2022) (discussing W.R.A.P. 12.04(d) requires the petitioner to order and arrange for the payment of a transcript necessary for the appeal).  The record gives no indication Mr. Gray attempted to obtain any transcription.  He therefore cannot now complain about the lack of a transcript.

### IV. The Converse County Board of Equalization did not Deny Mr. Gray an Opportunity for Discovery.

[¶30]  Mr. Gray claims he was not allowed proper discovery and the County Assessor's answers to his interrogatories were cursory.  Mr. Gray does not cite to any portion of the record to support his claims and we find nothing in the record supporting such claims.

[¶31]  The record supports Mr. Gray propounded discovery to the County Assessor in 2018 and 2020, to which the County Assessor responded.[3]  Although Mr. Gray claims the County Assessor answered his interrogatories in a "defiant and cursory way," he fails to point us to any portion of the record supporting his claims or present any argument other than conclusory statements.  We decline to address Mr. Gray's argument on discovery issues any further because he failed to present a valid contention supported by cogent argument or pertinent authority. *Jontra Holdings Pty Ltd v. Gas Sensing Tech. Corp.*, 2021 WY 17, ¶ 91, 479 P.3d 1222, 1247 (Wyo. 2021) (This Court will not consider arguments unsupported by cogent argument or citations to the record); *Osban v. State*, 2019 WY 43, ¶ 7 n.2, 439 P.3d 739, 741 n.2 (Wyo. 2019) ("An appellant is required to present this court with relevant authority and cogent argument.  It is not enough to identify a potential issue with the expectation that this court will flesh out the matter from there.  The appellant, at a minimum, must attempt to relate the rule of law he depends upon to the facts of his case.").

---

[3] Mr. Gray attempted to improperly supplement the record on appeal by filing the deposition of the County Assessor with the district court after it had reached its decision on review of the County Board's decision. Mr. Gray never filed a motion to supplement the record with this Court.  We did not consider or review the improperly filed deposition in reaching our decision. *O'Hare v. Hulme*, 2020 WY 31, ¶ 17, 458 P.3d 1225, 1233 (Wyo. 2020) (refusing to consider documents and testimony submitted after the district court made its decision because we cannot consider such documents on appeal).

## CONCLUSION

[¶32] The County Assessor complied with the applicable statutes and administrative regulations when she viewed and valued Mr. Gray's lots. We find the County Board's decision's for 2016, 2017, 2018, and 2020 are supported by substantial evidence. The County Board provided an adequate record for review of the administrative decision on appeal. Mr. Gray failed to show he was denied an opportunity to conduct discovery in accordance with law. We affirm the County Board's decisions for 2016, 2017, 2018, and 2020.