2001 WY 34

**COLORADO INTERSTATE GAS COMPANY, Appellant (Petitioner),**

v.

**WYOMING DEPARTMENT OF REVENUE, Appellee (Respondent).**

No. 99–284.

Supreme Court of Wyoming.

April 4, 2001.

Representing Appellant: Lawrence J. Wolfe of Holland & Hart, Cheyenne, WY; and Karen L. Pauley and Elizabeth B. Herdes, Colorado Springs, CO.

Representing Appellee: Gay Woodhouse, Wyoming Attorney General; and Michael Dinnerstein, Assistant Attorney General.

Before LEHMAN, C.J., and MACY *, GOLDEN, and HILL, JJ.

HILL, Justice.

[¶ 1] Appellant, Colorado Interstate Gas Company (CIG), seeks review of the State Board of Equalization's (Board) tax valuation for 1996. CIG asserts that the Department of Revenue (DOR) refused to predict the future and declined to accept CIG's evidence as the only correct view of how its tax valuation should be calculated. A petition for review was filed in the district court and the matter was certified here in accordance with W.R.A.P. 12.09(b).

[¶ 2] We affirm.

### ISSUES

[¶ 3] CIG asserts the Board erred in these respects:

A. Did the Board err by endorsing DOR's selected income when DOR failed to take into account the impact of regulation on the value of Taxpayer's property as required by law?

C. [*sic* ] Did the Board err by endorsing DOR's selected income when DOR failed to forecast the anticipated future benefits as required by law?

DOR refines those issues thus:

1. Did the Department fail to sufficiently consider the impact of FERC Order 636 given that the Department (1) only used income figures from years after FERC Order 636 became effective, and (2) only used income figures that CIG had itself already adjusted to take into account the effects of FERC Order 636?

* Retired June 2, 2000.

2. Should the Department have speculated as to future events rather than rely on actual income figures?

## FACTS

[¶ 4] For tax year 1996, the DOR calculated CIG's value using four methods: (1) historical cost less depreciation, (2) rate base indicator, (3) yield capitalization indicator, and (4) direct capitalization indicator. Each of these methods of deriving value depends upon the development of an industry capitalization rate. A capitalization rate is a rate used to convert an income stream into an estimate of value. DOR employed a three-year weighted average using 1993, 1994, and 1995 income taken against the capitalization rate to derive CIG's value for 1996.

[¶ 5] These events transpired against a background of deregulation of the natural gas industry that transformed the way companies such as CIG did business. The Federal Energy Regulatory Commission (FERC) began restructuring the natural gas industry in the 1980's. It became clear on July 31, 1991, that the changes to be occasioned by FERC Order 636 were on the horizon, and that CIG knew changes in natural gas marketing and pipeline transportation would occur. Order 636, which resulted in a change in traditional natural gas marketing and pipeline transportation by essentially making pipelines "open" transporters of natural gas, was introduced to the natural gas industry in a notice of proposed rule-making issued on July 31, 1991. The industry took part in the deliberative process prior to the issuance of the rule. In April 1992, Order 636 became effective, and pipelines, including CIG, were required to begin complying with the order.

[¶ 6] Despite the fact that Order 636 became effective in 1992, CIG disputes that 1993 was a proper reflection of its income because it had not yet fully implemented FERC Order 636. The Board disagreed. DOR accounted for the effects of FERC Order 636 by: (1) selecting a net operating income that was based on the post-FERC Order 636 income, and (2) by using post Order 636 income that was already adjusted by CIG to take account of the effects of Order 636.

## STANDARD OF REVIEW

[¶ 7] When reviewing administrative decisions, this Court is guided by Wyo.Stat.Ann. § 16–3–114(c) (LEXIS 1999), which provides in pertinent part:

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

. . . .

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

[¶ 8] This Court will defer to an agency's findings of fact if they are supported by substantial evidence. *Whiteman v. Workers' Safety and Compensation Division*, 984 P.2d 1079, 1081 (Wyo.1999). Substantial evidence is "relevant evidence that a reasonable mind can accept as adequate to support an agency's conclusion." *Id.* (quoting *Casper Oil Company v. Evenson*, 888 P.2d 221, 224 (Wyo.1995)). We will affirm an agency's conclusions of law only if they are in accordance with the law. *Snyder v. State ex rel. Worker's Compensation Division*, 957 P.2d 289, 293 (Wyo.1998). When an agency's

determinations involve elements of law and fact, or ultimate facts, we do not give them the same deference we reserve for findings of basic fact. *Basin Electric Power Cooperative, Inc. v. Department of Revenue*, 970 P.2d 841, 850 (Wyo.1998). Instead, we separate the factual elements from the legal elements to determine whether the correct rule of law has been correctly applied to the facts and defer to the agency's ultimate factual finding only if there is no error in either stating or applying the law. 970 P.2d at 850–51. The controversy in the case at bar involves the proper application of appraisal methods to the facts, which is an issue of ultimate fact and requires *de novo* review. 970 P.2d at 851.

[¶ 9] The Department's valuations for state-assessed property are presumed valid, accurate, and correct. *Chicago Burlington & Quincy Railroad Company v. Bruch*, 400 P.2d 494, 499 (Wyo.1965). This presumption can only be overcome by credible evidence to the contrary. *Id.* In the absence of evidence to the contrary, we presume that the officials charged with establishing value exercised honest judgment in accordance with the applicable rules, regulations, and other directives that have passed public scrutiny, either through legislative enactment or agency rule-making, or both. *Id.*

[¶ 10] The petitioner has the initial burden to present sufficient credible evidence to overcome the presumption, and a mere difference of opinion as to value is not sufficient. *Teton Valley Ranch v. State Board of Equalization*, 735 P.2d 107, 113 (Wyo.1987). If the petitioner successfully overcomes the presumption, then the Board is required to equally weigh the evidence of all parties and measure it against the appropriate burden of proof. *Basin*, 970 P.2d at 851. Once the presumption is successfully overcome, the burden of going forward shifts to the DOR to defend its valuation. *Id.* The petitioner, however, by challenging the valuation, bears the ultimate burden of persuasion to prove by a preponderance of the evidence that the valuation was not derived in accordance with the required constitutional and statutory requirements for valuing state-assessed property. *Id.*

[¶ 11] Moreover, in examining the propriety of the valuation method, our task is not to determine which of the various appraisal methods is best or most accurately estimates fair market value; rather, it is to determine whether substantial evidence exists to support usage of the chosen method of appraisal. *Amoco Production Company v. Board of Equalization*, 899 P.2d 855, 858 (Wyo.1995); *Holly Sugar Corporation v. Board of Equalization*, 839 P.2d 959, 963 (Wyo.1992).

## DISCUSSION

[¶ 12] Reduced to their essences, CIG raises these two issues. First, CIG claims DOR should not have included 1993 in using a three-year weighted average of CIG's income because CIG had not fully implemented FERC Order 636. Second, CIG claims that DOR should have forecasted into the future the impacts of FERC Order 636.

[¶ 13] As to the first of these issues, we will merely refer to our standard of review. There are several methods by which CIG's tax valuation might properly and accurately have been calculated. After careful consideration of the record, we conclude that the method used by DOR, and accepted by the Board, is a proper and accurate method of making such a calculation. CIG's brief demonstrates quite ably that there is a method of calculation, which might have reduced their tax liability, but that, of course, is not a function of this Court or of the judicial review process.

[¶ 14] CIG's second claim is equally subject to summary disposition. In contending that DOR refused to project CIG's future income potential, it relies, in part, upon a DOR employee's statement that he could not predict the future. CIG contends that our decision in *Basin*, 970 P.2d 841 at 856, is so at odds with such a verbalization that we must reverse and remand to the Board. CIG contends that it evinced a refusal on the part of DOR, as well as of the Board, to engage in making income projections. We do not see such a tension. The record demonstrates that the Board took into account all evidence

presented by DOR, as well as that of CIG. The methodology used by DOR included elements that projected CIG's future income. The record demonstrates that DOR arrived at a rationally based and accurate valuation of CIG's 1996 fair market value.

[¶ 15]   The order of the Board is affirmed in all respects.

LEHMAN, Chief Justice, dissenting.

[¶ 16]   I respectfully dissent.  The majority opinion holds that the Department of Revenue's (DOR) inclusion of 1993 income in the three-year weighted average to calculate Colorado Interstate Gas's (CIG) tax valuation was a proper and accurate method of determining CIG's tax liability.  I disagree.  As a general rule, the Board of Equalization (the Board) is required to take into account legally enforceable restrictions when it determines value.  *Basin Electric Power Coop. v. Dep't of Rev.*, 970 P.2d 841, 856 (Wyo.1998). In my opinion, the Board failed to properly consider the fact that CIG's 1993 income level was not indicative of what its income levels would be post-FERC Order 636.

[¶ 17]   Although FERC announced its intention to adopt FERC Order 636 in April of 1991 and issued FERC Order 636 in April of 1992, the provisions of the order did not apply to CIG until CIG completed compliance with the rule by filing and getting FERC's approval of CIG's new tariff setting forth CIG's plan to restructure the business to meet the demands of FERC Order 636.

This occurred when FERC approved CIG's settlement tariff proposal on September 3, 1993, making FERC Order 636 applicable to CIG on October 1, 1993.   The legally enforceable restriction created by FERC Order 636, therefore, did not exist until October 1, 1993, and the 1993 income level did not accurately reflect the consequences of FERC Order 636.   The dramatic decrease in income in 1994 of over $13.25 million is undeniable evidence that CIG's post-FERC Order 636 income will be significantly lower than its 1993 level.

[¶ 18]   Although the Board recognized that CIG did not begin operating fully under FERC Order 636 until October of 1993, it concluded that DOR's use of 1993 income was appropriate, reasoning that it was a year that a reasonable business investor could have concluded the effects of FERC Order 636 would be evident.  This logic is incompatible and improperly allows the use of an income level that did not fully reflect the effects of FERC Order 636.

[¶ 19]   For these reasons, I would reverse and remand the appraisal to the DOR for recalculation.