# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 117

APRIL TERM, A.D. 2015

September 2, 2015

MOUNTAIN VISTA RETIREMENT
RESIDENCE,

Appellant
(Petitioner),

v.                                                               S-14-0282

FREMONT COUNTY ASSESSOR,

Appellee
(Respondent).

*Appeal from the District Court of Fremont County*
*The Honorable Norman E. Young, Judge*

*Representing Appellant:*
   Thomas N. Long and Aaron Lyttle of Long Reimer Winegar Beppler LLP, Cheyenne, WY.  Argument by Mr. Lyttle.

*Representing Appellee:*
   Jodi A. Darrough, Deputy Fremont County Attorney, Lander, WY.

*Before BURKE, C.J., and HILL, \*KITE, DAVIS, and FOX, JJ.*

\* Justice Kite retired from judicial office effective August 3, 2015, and pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (LexisNexis 2015) she was reassigned to act on this matter on August 4, 2015.

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL,** Justice.

[¶1]    Mountain Vista Retirement Residence (Mountain Vista) challenged the Fremont County Assessor's 2012 property tax assessment to the Fremont County Board of Equalization (County Board), claiming an exemption.  The County Board affirmed the county assessor's determination that Mountain Vista is nonexempt from paying property taxes.  The Wyoming State Board of Equalization (State Board of Equalization) affirmed the County Board, as did the district court.  On appeal, Mountain Vista argues that it should be exempt based upon its status as a charitable or benevolent association.  We will affirm the County Board.

## ISSUES

[¶2]    Mountain Vista presents three issues on appeal:

> 1. Whether the Fremont County Board of Equalization (the County Board) erred in determining that Mountain Vista Retirement Residence (Mountain Vista) is not entitled to exemption from ad valorem tax as a charitable or benevolent association because it serves a limited number of people, notwithstanding the substantial benefit to the entire public of providing senior independent living services at or below cost.
>
> 2. Whether Chapter 14, § 13(a)(ii) of the Department of Revenue's rules, forbidding a tax-exempt senior housing facility from charging costs or allowing residents to provide their own furnishings, as interpreted by the County Board and applied to Mountain Vista, exceeds the Department of Revenue's statutory authority.
>
> 3. Whether the County Board erred in determining that Mountain Vista uses its property for primarily commercial purposes, despite the fact that Mountain Vista's provision of independent living services not available in commercial housing is central, rather than collateral, to its charitable purpose.

## STANDARD OF REVIEW

[¶3]    The Wyoming Administrative Procedure Act governs this Court's review of a decision by a county board.  Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2015) provides in pertinent part:

1

(c)     To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

. . . .

(ii)     Hold unlawful and set aside agency action, findings and conclusions found to be:

(A)     Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

. . . .

(B)     In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

. . . .

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

[¶4]    In *Britt v. Fremont County Assessor*, 2006 WY 10, 126 P.3d 117 (Wyo. 2006), we explained how we apply this statute in our review:

We review both the agency's findings of fact and law:

"Considerable deference is accorded to the findings of fact of the agency, and this Court does not disturb them unless they are contrary to the overwhelming weight of the evidence. *Amoco Production Co. v. Wyoming State Bd. of Equalization*, 12 P. 3d 668, 671 (Wyo. 2000). An agency's conclusions of law can be affirmed only if they are in accord with the law. *Id*. at 672. Our function is to correct any error that an agency makes in its interpretation or application of the law."

*EOG Resources, Inc. v. Wyoming Dep't of Revenue*, 2004 WY 35, ¶ 12, 86 P. 3d 1280, [1284] (Wyo. 2004).

2

. . . .

> "The district court and this Court are charged with reviewing an agency's decision for substantial evidence. That duty requires a review of the entire record to determine if there is relevant evidence that a reasonable mind might accept in support of the agency's decision. …"
>
> *McTiernan v. Scott*, 2001 WY 87, ¶ 16, 31 P. 3d 749, [756] (Wyo. 2001) (citations and footnote omitted).

. . . .

Findings of ultimate fact are reviewed de novo:

> "When an agency's determinations contain elements of law and fact, we do not treat them with the deference we reserve for findings of basic fact. When reviewing an 'ultimate fact,' we separate the factual and legal aspects of the finding to determine whether the correct rule of law has been properly applied to the facts. We do not defer to the agency's ultimate factual finding if there is an error in either stating or applying the law."
>
> *Basin Elec. Power Co-op., Inc. v. Dep't of Revenue, State of Wyo.*, 970 P.2d 841, 850-51 (Wyo. 1998) (citations omitted).

*Britt*, ¶ 17, 126 P.3d at 122-123, (quoting *BP Am. Prod. Co. v. Dep't of Revenue*, 2005 WY 60, ¶¶ 10-13, 112 P.3d 596, 602-603 (Wyo. 2005)). Neither the decision of the district court nor that of the State Board of Equalization is entitled to deference; rather, the court conducts "an independent inquiry into the matter, just as if it had proceeded directly to us from the agency." *Id.*

## FACTS

[¶5]   Mountain Vista is a non-profit corporation that owns real property in Fremont County, Wyoming, which it uses to provide independent living services to elderly residents. To qualify to live at Mountain Vista, resident applicants may join through a membership fee or by agreeing to a month-to-month lease. Applicants must be age 55 or older and capable of living independently without the assistance of a third-party and without assistance from anyone employed by Mountain Vista. This means residents must be able to perform alone the tasks of day-to-day life, such as cooking, eating, cleaning

and grooming. Support provided by Mountain Vista includes transportation, meal service, exercise classes, socialization with other residents, and safety services. These support services are paid for through usage fees from residents of Mountain Vista. Residents are expected and permitted to provide their own furnishings.

[¶6]  To qualify for resident status at Mountain Vista, each resident application must complete an Independent Living Assessment and meet physical requirements, which demonstrate that the individual can live independently or with the aid of a spouse or roommate. Physical health is continually monitored and reassessed after an illness or a fall. This is done in order to determine that residents can continue to live at Mountain Vista independently. Applicants must also meet financial requirements to qualify to live at Mountain Vista. Members of Mountain Vista are assessed a one-time membership fee, which is calculated in increments of $10,000. The membership fee determines a monthly service fee, which includes property tax, cable, water, sewer, garbage and snow removal, lawn care, window washing, common area usage, security, and general maintenance. The higher the membership fee, the lower the monthly service fee. Residents choose their initial membership fee based on their personal finances and choice of housing unit, which does not give them a property interest. A unit may not be sold, but may be subleased, and if a resident moves or dies, the membership fee is reimbursed on a sliding scale based on length of residence.

[¶7]  In 2012, the Fremont County Assessor issued its notice of property valuation to Mountain Vista, assessing its commercial land and improvements at $1,327,908 and its personal property at $8,246. Mountain Vista contested this valuation on the basis that it should be exempt from property tax because it is a charitable or benevolent association that uses its property for primarily non-commercial purposes. The County Board, the State Board of Equalization, and the district court upheld the valuation. This appeal followed.

**DISCUSSION**

[¶8]  The Wyoming Constitution specifies that certain property shall be exempt from taxation and authorizes the legislature to exempt other property by statute. It provides:

> The property of the United States, the state, counties, cities, towns, school districts and municipal corporations, when used primarily for a governmental purpose, and public libraries, lots with the buildings thereon used exclusively for religious worship, church parsonages, church schools and public cemeteries, shall be exempt from taxation, and such other property as the legislature may by general law provide.

4

Wyo. Const. art. 15, § 12.

[¶9]   The statutory exemption at issue in this case exempts property from taxation if it is:

> Property used by a secret, benevolent and charitable society or association including any fraternal organization officially recognized by the University of Wyoming or any community college, and senior citizens centers to the extent it is not used for private profit nor primarily for commercial purposes by the society, association or center, or lessee thereof[.]

Wyo. Stat. Ann. § 39-11-105(a)(xxvi) (LexisNexis 2013).

[¶10]  Mountain Vista argues that the County Board erred when it decided that Mountain Vista is not entitled to exemption from ad valorem tax as a charitable or benevolent association.  Mountain Vista does not claim to be a senior citizen center as that term is defined by statute and rule, but instead contends that it is exempt from taxation as a charitable and/or benevolent association.  Mountain Vista also argues that it uses its property for primarily non-commercial purposes. We disagree and affirm the County Board's decision, addressing each of Mountain Vista's contentions hereinafter.

## A.     <u>Charitable Association</u>

[¶11]  The Department of Revenue's rules define charity as follows:

> "Charity" is a gift for the benefit of an indefinite number of persons in Wyoming, by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works.  The fundamental basis for this exemption is the benefit conferred upon the public, and the consequent relief, to some extent, of the burden upon the state to care and advance the interests of its citizens.

Department of Revenue Rules, ch. 14, § 13 (a)(ii) (2014).

[¶12]  The County Board affirmed the county assessor's determination that Mountain Vista is not a charitable association, and we agree and find that substantial evidence exists in the record to support the finding that Mountain Vista is not a charitable association.  A strong presumption favors the county assessor's valuation. *Britt*, ¶ 20, 126 P.3d 124.  "In the absence of evidence to the contrary, we presume that the officials

charged with establishing value exercised honest judgment in accordance with the applicable rules, regulations, and other directives that have passed public scrutiny, either through legislative enactment or agency rule-making, or both." *Amoco Prod. Co. v. Dep't of Revenue*, 2004 WY 89, ¶ 7, 94 P.3d 430, 435 (Wyo. 2004). Here, Mountain Vista had the initial burden of presenting evidence sufficient to overcome the presumption. *Id.*, ¶ 8, 94 P.3d 435. If successful, then the County Board was "required to equally weigh the evidence of all parties and measure it against the appropriate burden of proof." *Colo. Interstate Gas Co. v. State Dep't of Revenue*, 2001 WY 34, ¶ 10, 20 P.3d 528, 531 (Wyo. 2001). The burden of going forward would then have shifted to the county assessor to defend her valuation. *Id.* Mountain Vista carried "the ultimate burden of persuasion to prove by a preponderance of the evidence that the valuation was not derived in accordance with the required constitutional and statutory requirements for valuing … property." *Id.*

[¶13] The County Board considered the testimony and exhibits presented in the context of § 39-11-105 and the Department of Revenue rules and concluded:

> a. Regarding the first factor, whether the purpose of the Taxpayer's operation is charitable in nature, has not been proven by the taxpayer. Their membership is for a finite number of members who must have the financial, physical and mental capabilities to be accepted which is targeting a specific group of persons and is therefore not an indefinite number of persons as required by DOR rules Chapter 14 § 12(a)(ii). This property simply does not meet the threshold intended by the Wyoming Legislature to qualify for tax-exempt status as a charitable organization. The County Board notes that a potential applicant who "is not known by a Board Member, Staff Member or Resident, a personal interview may be required." . . .
>
> b. The purpose of the Taxpayer's property is for housing which their members must pay for and is not subsidized in any fashion.
>
> c. The Assessor's argument that the taxpayer's property is used for a commercial purpose is also compelling, but not necessary as the County Board finds this is not a charity. (see DOR Rules, Chapter 14, § 13(a)(ii)).
>
> d. The dissenting County Board member notes that the taxpayer does relieve a burden on the citizens of Wyoming by fulfilling an intermediate stage of living between a personal home and a nursing home[.]

[¶14] Mountain Vista never overcame the presumption favoring the county assessor's

valuation. The county assessor reviewed the exemption statutes and determined that Mountain Vista was not a charitable association. The county assessor concluded that the exclusivity of Mountain Vista's membership, the membership fees, security deposit, and monthly fees and charges for additional services, in addition to the health requirements and the fact that the residents do not own the property and must provide their own furnishings, established the use of the property as commercial and disqualified it for exemption. We are in total agreement. While Mountain Vista does provide beneficial services to its occupants, those services cannot be classified as a gift such that Mountain Vista is then classified as a charity. Mountain Vista's policies require residents to pay for the costs of operating the property, as well as extra amenities. It is difficult to view such an arrangement as charitable. *See Friendship Manor Corp. v. Tax Comm'n*, 26 Utah 2d 227, 487 P.2d 1272 (1971) (requiring that a charity relieve the burden of government or benefit the general welfare); *United Presbyterian Asso. v. Board of County Comm'rs*, 167 Colo. 485, 448 P.2d 967 (1968) (where material reciprocity between alleged recipients and their alleged donor exists -- then charity does not).

[¶15] Mountain Vista also argues that it should be classified as a charitable organization because the services it provides are "for the benefit of an indefinite number of persons." We disagree. As testified to by the county assessor, Mountain Vista's facility "is for a finite number of individuals who have adequate financial resources and the gift of good health." Mountain Vista's facility consists of 19 units and thus serves a very limited number of residents. However, Mountain Vista argues that "all charities benefit only a limited number of persons" and refers to *Department of Revenue & Taxation v. Casper Legion Baseball Club*, 767 P.2d 608 (Wyo. 1989) where this Court determined that in deciding whether an organization is eligible for a charitable tax exemption, the focus must be "on whether the charity primarily engages in activities providing an indefinite number of persons in the general public with benefits designed to aid them in an educational, moral, physical, or social manner" and "whether the charity provides access to those benefits in an equal and nondiscriminatory way." *Id.*, 767 P.2d at 611. There, all youth who chose to participate positively benefit from the "physical," "social," and "moral" experience of trying out for a baseball team. Here, there is no public benefit to the members of the general public that apply for membership and are theoretically denied.

[¶16] Other courts have spoken on this very subject. In an Idaho Supreme Court case, the following discussion occurred:

> The question of whether a non-profit corporation provides a general public benefit, so as to be entitled to property tax exemption, is somewhat complex. Tax exemptions are disfavored generally, perhaps because they seem to conflict with principles of fairness – equality and uniformity – in bearing the burdens of government. *See, Hilltop Village, Inc.*

7

*v. Kerrville Independent School District*, 426 S.W.2d 943, 947 (Tex.1968) *overruled on other grounds in City of McAllen v. Evangelical Lutheran Good Samaritan Society*, 530 S.W.2d 806 (Tex.1976). They are said to be justified, in cases of a charitable or benevolent organization for example, by an offsetting benefit to the community (monetary or otherwise). Hence has arisen the test that an institution may be entitled to an exemption where it performs a function which might otherwise be an obligation of government. A nonprofit corporation may benefit only a limited group of people and still be considered "charitable" if that group of people possess a need which government might be required to fill. For example, a facility for physically handicapped persons might be "charitable" even though those persons were all members of a particular church or club because the facility is providing a general benefit to the community by relieving a potential obligation of government. However, where there is no assistance to individuals which might normally require governmental funds, as is the case with Sunny Ridge, the institution must meet a stricter test: it must provide benefits to the community at large (**or, as some courts have stated it, to an "indefinite number of persons"**). *See, e.g., Oasis, Midwest Center for Human Potential v. Rosewell*, 55 Ill.App.3d 851, 13 Ill.Dec. 97, 370 N.E.2d 1124, 1130 (1977); *Benton County v. Allen*, 170 Or. 481, 133 P.2d 991, 992 (1943). Since the residents at Sunny Ridge must be able to pay completely for the benefits they receive, and since they must be physically able to care for themselves, they are not a group of persons for whom any government assistance would be needed. Therefore, Sunny Ridge must provide some general benefit to the community as a whole. However, the benefits available at the center are reserved for the restricted group of persons who have met the entrance qualifications, and while in theory any member of the community who can meet those qualifications may join, in actual effect only a limited number of openings can exist during a given period of time. We find no fault in this; we simply recognize that benefits provided by Sunny Ridge must necessarily be limited to a relative few. It may be that an indirect benefit flows to the community; however, as pointed out by the court in *Massachusetts Medical Society v. Assessors of Boston*, 340 Mass. 327, 164 N.E.2d 325 (1960),

"Whether an institution is in its character literary, benevolent, charitable or scientific will depend upon the declared purposes and the actual work performed. (Citations omitted.)  An institution will be classed as charitable *if the dominant purpose of its work is for the public good and the work done for its members is but the means adopted for this purpose.  But if the dominant purpose of its work is to benefit its members or a limited class of persons it will not be so classed, even though the public will derive an incidental benefit from such work." Id*. at 328. (Emphasis added.)

We find it laudable that Sunny Ridge provides the care it does; however, as this court stated in *Sunset Memorial Gardens v. Idaho State Tax Commission*, 80 Idaho 206, 219, 327 P.2d 766, 774 (1958), "[t]he basis of tax exemptions is the accomplishment of public purpose and not the favoring of particular persons or corporations at the expense of taxpayers generally."  If Sunny Ridge attempted to provide its services based on need to a greater extent, there might be more of a direct public benefit, even though the center can accommodate only a limited number of persons.  As the record shows, however, there is no means provided by which individuals having particular needs for the types of services Sunny Ridge can provide are singled out for admission, or for assistance.  Although the record shows that Sunny Ridge provides its care at substantial savings over what would be charged at a nursing home, for example, there is nothing in the record to indicate that this benefit of reduced costs is directed toward those who particularly need it.  The savings may well benefit primarily persons who could afford to pay higher costs.  In any case, the type of individual who needs nursing home care could not pass the entrance qualifications at Sunny Ridge.

. . . .

Based on the factors already discussed, and after consideration of the authorities cited, we hold as a matter of law that Sunny Ridge -- under the particular circumstances of this case -- is not a "charitable corporation" under I.C. § 63-105C.  We emphasize that our determination is a narrow one: we are persuaded of a need to be flexible in such cases.  We

9

agree with the Colorado Supreme Court when it stated:

> "We shall not attempt in this opinion to enunciate a fixed definition of the phrase 'strictly charitable purposes,' 'lest by words of exclusion we might unintentionally seem to impose a legal restraint upon that cardinal grace which by its very nature thrives in proportion to the freedom of its proper exercise." *United Presbyterian Ass'n v. Board of County Comm'rs*, 167 Colo. 485, 448 P.2d 967, 972 (1968).

> We leave for determination at another time whether a similar nonprofit corporation -- or, for that matter, whether this corporation, under different circumstances -- is entitled to a property tax exemption under the terms of I.C. § 63-105C as it now reads.

*In re Appeal of Sunny Ridge Manor*, 675 P.2d 813, 817-818 (Idaho 1984) (emphasis added).

[¶17] The decision of the Idaho court is on point. Here, we agree that the service Mountain Vista provides is an important one. However, it does not qualify as a charitable association. Mountain Vista's services are not a gift pursuant to Department of Revenue rules, nor does Mountain Vista benefit an indefinite number of persons. Furthermore, Mountain Vista's services do not provide educational or religious benefits, or relief from suffering. There is no public benefit provided, nor a public burden relieved and, accordingly, Mountain Vista does not qualify as a charitable association.

### B. Benevolent Association

[¶18] We turn to our next consideration: whether or not Mountain Vista is a benevolent association. The Department of Revenue's rules define benevolent as follows:

> "Benevolent" includes purposes which may be deemed charitable, as well as acts dictated by kindness, good will, or a disposition to do good, the objects of which have no relation to the promotion of education, learning, or religion, the relief of the needy, the sick, or the afflicted, the support of public works, or the relief of public burdens. The term has wider significance than "charitable" as a legal tenet but shall be limited to purposes or activities of sufficient public importance and wide-spread social value.

Department of Revenue Rules, ch. 14, § 13(a)(iii) (2014).

[¶19] The Department of Revenue's rules preclude application of the benevolent association exemption if the entity uses its property primarily for commercial purposes. Specifically, the rules provide:

> Housing made available to senior citizens which is not part of a senior citizens' center (such as a retirement home) is exempt only if the entity owning the property meets the criteria of a "charitable and benevolent society or association" in Section 13 of this Chapter. **A retirement home is taxable if the residents provide their own furnishings and are charged for the cost of operating the home,** including extra amenities enjoyed by the residents. **Such a retirement home constitutes a commercial enterprise, even if operated on a non-profit basis with reduced charges.**

Department of Revenue Rules, Chapter 14, § 14(a)(ii) (2014) (emphasis added).

[¶20] The County Board made no specific findings based upon the definition of a benevolent association and instead upheld the county assessor's determination based upon the assessor's conclusion that Mountain Vista's property was primarily used for commercial purposes. More specifically, the county assessor found:

> "Mountain Vista residents must provide their own furnishings and are charged for the cost of operating the home. …
>
> [The rule] goes on further to state that, 'A retirement home is taxable if the residents provide their own furnishings and are charged for the cost of operating the home…'
>
> . . . .
>
> Section 12 defines commercial purpose as 'The property at issue shall not be used primarily for a commercial purpose, that is, use of a property or any portion thereof to provide services, merchandise, areas or activities for a charge which are generally obtainable from any commercial enterprise and are collateral to the purpose of secret, benevolent and charitable. …
>
> 'The use of property for commercial purpose is controlling, not whether or not a profit is actually made nor how the

revenue is ultimately used. If an activity is considered commercial, it does not become noncommercial merely because the revenue derived from the commercial use is devoted to charitable and authorized purposes.'

[¶21] We find this conclusion to be supported by substantial evidence. The county assessor testified that "[t]he residents provide their own furnishings and pay for their own utilities, phone, gas, electric and personal property." The record also shows that the property is used as housing for senior citizens with means to live independently, and the property is in the competitive housing market. Furthermore, residents pay for the services used in the daily operation of the housing, as well as utilities.

[¶22] Mountain Vista attempts to avoid the application of this rule by arguing that the Department of Revenue exceeded its authority in promulgating the rule. In so arguing, Mountain Vista contends that the rule is clearly contrary to a legislative intent and policy to encourage these types of residential facilities. We disagree. The legislature has made numerous revisions to the statutory tax exemptions, the most recent changes taking effect on January 1, 2015. Those changes in fact specifically addressed the exemptions at issue and separated out the exemptions for senior citizens, charitable associations, and benevolent associations. The current exemptions for senior centers and benevolent associations still, however, condition their exemption on a showing that the property is used for primarily *noncommercial purposes*. The legislature did not add a "commercial purposes" definition, nor did it make changes to address the Department of Revenue's interpretation of that term. We presume that when the legislature enacts laws, it does so with full knowledge of the existing law. *In re Estate of Scherer,* 2014 WY 129, ¶ 17, 336 P.3d 129, 134 (Wyo. 2014). Because the legislature has revised these exemptions without addressing the Department of Revenue's interpretation of the exemption, we conclude that the Department of Revenue's interpretation is consistent with the legislature's intent.

## CONCLUSION

[¶23] We affirm the County Board's decision to uphold the Fremont County Assessor's original status determination and tax assessment and ultimately deny Mountain Vista a property tax exemption.

[¶24] We conclude that Mountain Vista is neither a charitable or benevolent association and that its property is primarily used for commercial purposes.

[¶25] Affirmed.