BOOMGAARDEN, Justice.
[¶1] Appellants, Helmut J. Mueller Limited Partnership (Mueller); Josef Matuschka; Chicago Properties, Limited Partnership (Chicago Properties); Jerome P. Glunz; and John P. Glunz challenged the Washakie County Assessor's (Assessor) 2014 notices of assessment, which classified Taxpayers' four properties as either residential or vacant residential for tax purposes. The appellants (collectively, "Taxpayers") argue their properties qualify for classification as agricultural lands. The Washakie County Board of Equalization (county board) agreed with Taxpayers and reversed the Assessor's valuations. However, the Wyoming State Board of Equalization (state board) reversed the county board's decision, and the district court affirmed the state board's decision. We affirm the district court's order.
ISSUE
[¶2] This case presents a single issue, which the Assessor accurately described:
Was the county board's decision unsupported by substantial evidence when it determined that the Taxpayers satisfied the fourth requirement for attaining agricultural land status under Wyo. Stat. Ann. § 39-13-103(b)(x)(B)(IV) ?
FACTS
[¶3] Taxpayers separately own four parcels of land, each around 160 acres in size, in Washakie County, Wyoming.[1] In March 2014, the Assessor issued notices of assessment for Taxpayers' properties. As had been done since Taxpayers purchased their properties, the assessments classified the Glunz, Matuschka, and Mueller parcels as "residential vacant" and the Chicago Properties parcel as "residential". Taxpayers appealed their respective assessments to the county board, arguing each property should be classified as agricultural land. Along with their notices of appeal, Taxpayers submitted signed affidavits to verify their properties met the four statutory requirements for classification as agricultural land.[2] See Wyo. Stat. Ann. § 39-13-103(b)(x)(B)(I)-(IV) (LexisNexis 2013). In response, the Assessor wrote to Taxpayers requesting financial records to support the affidavits and allow the Assessor to review the reclassification requests prior to the county board's hearing.[3] Taxpayers did not *735 respond to the request and, instead, waited to provide documentation in their prehearing disclosures. Consequently, the Assessor did not reclassify the properties and the parties proceeded to hearing.
[¶4] Taxpayers called two witnesses at the hearing. First, Mr. Bryan O'Donnell testified that he leased and grazed cattle on Chicago Properties' parcel. Mr. O'Donnell's lease was new, however, and did not take effect until after the notice of assessment. Taxpayers next called Mr. Mike Reilly, the president of the board of directors of the Otter Creek Grazing Association (Otter Creek). Otter Creek leased the four parcels for grazing prior to and through the assessment period.[4] The leases required Otter Creek to pay $8 per acre per year and to maintain fencing (a total of $1,280 per year for each 160-acre parcel). Mr. Reilly testified, however, that Otter Creek paid $14 per acre per year, and in turn Taxpayers paid Otter Creek around $6 per acre for fence maintenance. He emphasized that Otter Creek paid Taxpayers by the acre, not by AUM.[5]
[¶5] Regarding Otter Creek's revenue and activities, Mr. Reilly testified that the association generated more than $1,000 in annual revenue from selling bulls and from selling forage to its members and to non-members. He stated that Otter Creek generally earned more than $1,000 in annual revenue from each of Taxpayers' properties, but he did not provide any details supporting this statement. Mr. Reilly stated the association used "common sense" in determining the number of cattle to graze on Taxpayers' properties and did not overuse the properties each year so it could graze the properties again the following year. He testified that Taxpayers' properties were "well utilized" and Otter Creek generally used each property to the extent of its productive capacity. Mr. Reilly did not provide any details about Otter Creek's specific use of each property.
[¶6] The Assessor also testified at the county board's hearing, stating that once Taxpayers provided her with their grazing leases, she considered whether Taxpayers' properties qualified as agricultural land by relying on a method applied in the state board decision, In re Richard & Glenda Hlavnicka from a Valuation Decision of the Fremont County Assessor 2005 Property Valuation , Docket No. 2006-87, 2006 WL 3327972 (Wyo. Bd. of Equalization Sept. 7, 2006). Based on her understanding of that case, the Assessor evaluated Taxpayers' properties through a hypothetical calculation by supposing the lands were agricultural, applying the required agricultural valuation procedures under the Department of Revenue's (Department) rules and 2014 Agricultural Land Valuation Study, and then comparing the results of those calculations to Taxpayers' grazing lease revenue. She offered into evidence the worksheets she prepared for each property and testified that, in each case, Taxpayers' revenues were far below the properties' expected production values under the Department's study.[6] She testified that she had applied the same method when considering similar requests to reclassify properties as agricultural land.
[¶7] Taxpayers challenged the Assessor's calculations and proposed their own, slightly *736 different, comparison in a demonstrative exhibit. Taxpayers did not enter that exhibit into evidence or present a witness to testify about Taxpayers' method and calculations. Instead, Taxpayers' attorney used the demonstrative exhibit in his arguments to the board and when cross-examining the Assessor. In response to the questioning, the Assessor asserted the calculations in the exhibit were incorrect.
[¶8] Following the hearing, the county board reversed the Assessor's valuations, concluding Taxpayers had demonstrated, by a preponderance of the evidence, that their properties met the four requirements under Wyo. Stat. Ann. § 39-13-103(b)(x)(B) to be taxed as agricultural land. The Assessor timely appealed to the state board. The state board affirmed the county board's conclusions on the first three statutory requirements, but it reversed the county board's order due to a lack of substantial evidence to support the county board's determination that Taxpayers met their burden on the fourth requirement. Taxpayers appealed to the district court, which affirmed the state board. Taxpayers then timely appealed the district court's order to this Court.
STANDARD OF REVIEW
[¶9] This appeal arises from a challenge to the county board's findings of fact, conclusions of law, and order regarding Taxpayers' March 2014 notices of assessment.[7] We review administrative decisions, such as the county board's order, under the guidance of Wyo. Stat. Ann. § 16-3-114(c) (Lexis Nexis 2017), which states in relevant part:
(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
....
(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
(B) Contrary to constitutional right, power, privilege or immunity;
(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
(D) Without observance of procedure required by law; or
(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.
Wyo. Stat. Ann. § 16-3-114(c).
[¶10] We review this matter as if it had proceeded directly to us from the county board of equalization; the decisions of the district court and the state board are not entitled to deference. Mountain Vista Ret. Residence v. Fremont Cty. Assessor , 2015 WY 117, ¶ 4, 356 P.3d 269, 272 (Wyo. 2015) (citing Britt v. Fremont Cty. Assessor , 2006 WY 10, ¶ 17, 126 P.3d 117, 123 (Wyo. 2006) ). We review an agency's or the district court's legal conclusions de novo and affirm a legal conclusion only if it is in accord with the law. Id. We defer to an agency's findings of fact if they are supported by substantial evidence, which is "relevant evidence that a reasonable mind can accept as adequate to support an agency's conclusion." Colo. Interstate Gas Co. v. Wyo. Dep't of Revenue , 2001 WY 34, ¶ 8, 20 P.3d 528, 530 (Wyo. 2001) (quoting Whiteman v. Workers' Safety & Comp. Div. , 984 P.2d 1079, 1081 (Wyo. 1999) ).
*737 DISCUSSION
[¶11] The Wyoming Constitution requires, "All taxable property shall be valued at its full value as defined by the legislature except agricultural and grazing lands which shall be valued according to the capability of the land to produce agricultural products under normal conditions." Wyo. Const. art. 15, § 11 (b). Being separately owned and assessed, each Taxpayer's parcel of land was required to meet four statutory requirements to be classified as agricultural land in 2014:
(I) The land is presently being used and employed for an agricultural purpose;
(II) The land is not part of a platted subdivision, except for a parcel of thirty-five (35) acres or more which otherwise qualifies as agricultural land;
(III) If the land is not leased land, the owner of the land has derived annual gross revenues of not less than five hundred dollars ($500.00) from the marketing of agricultural products, or if the land is leased land the lessee has derived annual gross revenues of not less than one thousand dollars ($1,000.00) from the marketing of agricultural products; and
(IV) The land has been used or employed, consistent with the land's size, location and capability to produce as defined by department rules and the mapping and agricultural manual published by the department, primarily in an agricultural operation[.]
Wyo. Stat. Ann. § 39-13-103(b)(x)(B)[8] (emphasis added); see Wyo. Stat. Ann. § 39-13-101(a)(iii) (Lexis Nexis 2013) (defining "agricultural land" as "land which meets the requirements of W.S. 39-13-103(b)(x) for the purpose of tax assessment"). Agricultural land includes land used for "[r]earing, feeding, grazing or management of livestock." Wyo. Stat. Ann. § 39-13-101(a)(viii) (C) (defining "agricultural purpose").
[¶12] The county board, state board, and district court all ruled that Taxpayers had satisfied the first three statutory requirements for agricultural land. Consequently, the only issue before us is whether substantial evidence supports the county board's conclusions that Taxpayers' properties satisfied the fourth requirement. Taxpayers insist we must uphold the county board's conclusions on the fourth requirement because the Assessor presented no evidence that the properties were underutilized. This argument ignores Taxpayers' burden of proof in this case.
[¶13] To prevail before the county board and successfully change their properties' assessments to tax the properties as agricultural land, Taxpayers had the ultimate burden of persuasion to prove, by a preponderance of the evidence, that the Assessor's valuations were not derived in accordance with the required constitutional and statutory requirements for valuing property. Mountain Vista Ret. Residence , ¶ 12, 356 P.3d at 274 (quoting Colo. Interstate Gas Co. , ¶ 10, 20 P.3d at 531 ) (quotation marks omitted). Absent evidence to the contrary, "we presume that the officials charged with establishing value exercised honest judgment in accordance with the applicable rules, regulations, and other directives that have passed public scrutiny, either through legislative enactment or agency rule-making, or both." Id. ¶ 12, 356 P.3d at 273 (quoting Amoco Prod. Co. v. Dep't of Revenue , 2004 WY 89, ¶ 7, 94 P.3d 430, 435 (Wyo. 2004) ). Taxpayers, therefore, had to provide credible evidence to overcome the strong presumption in favor of the Assessor's valuations. Id. (citations omitted). If Taxpayers had presented evidence to rebut this strong presumption, the burden of going forward would have then shifted to the Assessor to defend her valuation. Id. ¶ 12, 356 P.3d at 274 (citation omitted). The county board would have had to equally weigh all evidence and measure it against the appropriate burden of proof. Id. ¶ 12, 356 P.3d at 273-74. In this case, however, Taxpayers failed to rebut the presumption that the Assessor properly assessed their properties.
[¶14] To satisfy the fourth requirement, Taxpayers had to present credible evidence that each parcel was used or employed consistent with the land's size, location, and capability to produce, primarily in an agricultural *738 operation. Wyo. Stat. Ann. § 39-13-103(b)(x)(B)(IV). Taxpayers presented testimony on Otter Creek's overall operations but failed to present specific evidence demonstrating Otter Creek's actual use of each parcel and how that use satisfied the statutory requirement. Mr. O'Donnell's testimony was neither relevant nor persuasive because he leased the Chicago Properties parcel after the Assessor's 2014 valuation and Taxpayers had to show the land's use met the fourth requirement prior to the valuation. See id. While Otter Creek's leases and Mr. Reilly's testimony evidenced that Otter Creek leased and grazed on Taxpayers' parcels during the assessment period, Mr. Reilly provided only general statements about the association's revenues and agricultural practices. He testified that Otter Creek generated more than $1,000 in total annual revenue from selling cattle and forage, and that Otter Creek generally earned more than $1,000 in annual revenue from each of Taxpayers' properties. But he did not testify to actual use tied to each specific property consistent with its size, location, and capability to produce as defined by Department rules and the mapping and agricultural manual published by the Department. Regarding Otter Creek's grazing practices, Mr. Reilly broadly stated that Taxpayers' properties were "well utilized" and grazed to the extent of their productive capacities, and that Otter Creek used "common sense" in determining how heavily to graze the properties and it did not overgraze them. However, he did not testify, for example, about the number of cattle and length of time Otter Creek grazed on each property relative to that property's size, location, or productive capability.
[¶15] Despite the lack of specific evidence on the actual use of each parcel and how that use satisfied the statutory requirement, the county board concluded Taxpayers "demonstrated by a preponderance of the evidence that the properties' use is consistent with the land size, location, and particularly its capability to produce as an agricultural operation in realizing the rental income it does as grazing land." We review whether this conclusion correctly states the law and is supported by substantial evidence. The state board stated in its order, "We can discern from the record only that Otter Creek sold an undefined number of cattle that were fed on one or more of Taxpayers' parcels during 2013." Our review of the record results in the same conclusion. Mr. Reilly's broad statements might speak to one or more of the other three statutory requirements for agricultural lands, but Taxpayers failed to offer evidence establishing that Otter Creek grazed each parcel consistent with its capability to produce. Whether the Assessor failed to present evidence that the properties were not fully utilized is immaterial because the burden is on Taxpayers to overcome the presumption in favor of the Assessor. There simply is no substantial evidence to support the county board's conclusion that Taxpayers met the requirements of Wyo. Stat. Ann. § 39-13-103(b)(x)(B)(IV).
[¶16] Further, Taxpayers' argument that the county board properly determined that "Taxpayers are realizing rental payments substantially in excess of that which is calculated pursuant to the Department of Revenue's Rules for a private forage lease rate" is unavailing. The county board compared each Taxpayer's lease revenue from Otter Creek, on a per-acre basis, with what the properties would generate if Taxpayers charged $17.43 per AUM-the rate the Department of Revenue's agricultural land valuation study used to calculate assessments. The county board stated in its order, "Taxpayers have demonstrated that using the multiplier of yield per acre (AUM's per acre) times income ($17.43) the presumed or putative total annual income is far less than that which is actually received from their lessee, Otter Creek Grazing Association." The county board calculated that: 1) the Chicago Properties parcel had a putative total annual lease income of $523.42, but actually earned $1,288.28; 2) the Matuschka parcel's putative income was $468.32, but its actual income was $1,288.28; 3) the Glunz parcel had a putative income of $505.78, but actually earned $1,280; and 4) the Mueller parcel's putative income was $442.81, but its actual income was $1,280.
[¶17] Taxpayers assert the county board's comparison of actual lease income to putative lease income is appropriate under the Department's regulations and standards and *739 shows Taxpayers' properties are used to their full productive capabilities. They also allege the county board's comparison is superior to the Assessor's methodology, which compared each property's actual lease revenue with the property's minimum agricultural production revenue according to the benchmarks in the Department's study. Although the Assessor testified about the comparison method affirmed by the state board in its decision, In re Hlavnicka , 2006 WL 3327972, we note neither the Assessor nor the board applied the exact methodology from Hlavnicka . In that case, the Fremont county assessor took a property's reported revenue from marketing agricultural products and compared it to the expected production revenue based on the Department's study for that year. Id. at *4, ¶ 25, and *11, ¶ 52. The approach in that case compared the property's actual production revenue with its expected production revenue.[9] See id. In contrast, the county board and the Assessor based their comparisons on the actual lease revenue from each of Taxpayers' properties, rather than each parcel's production revenue.
[¶18] Regardless whether the county board's comparison is better than the Assessor's methodology as Taxpayers suggest, Taxpayers cannot prevail because the board's comparison is not based on evidence in the record. The board's calculations correspond to Taxpayers' demonstrative exhibit, which Taxpayers' attorney argued from during the hearing and then attached to Taxpayers' supplemented proposed findings of fact and conclusions of law. However, no witness testified in support of the demonstrative exhibit and it was not admitted as evidence. The only sworn testimony related to the demonstrative exhibit was that of the Assessor, who testified during cross-examination that the demonstrative exhibit was incorrect. The county board further based its calculations on the unsupported assumption that the Taxpayers' lease revenue evidenced the extent to which Otter Creek used and produced agricultural revenue from each property. The Assessor testified that a landowner could lease a property for grazing without having the land necessarily generate any agricultural product. Taxpayers presented no evidence to support the county board's assumption that each parcel's lease revenue directly corresponded to and evidenced the extent of its agricultural production. For these reasons, the county board's calculations cannot support its conclusion that Taxpayers satisfied the requirements of Wyo. Stat. Ann. § 39-13-103(b)(x)(B)(IV).
CONCLUSION
[¶19] Taxpayers appealed their properties' 2014 assessments, which the Assessor made without affidavits or other documents from Taxpayers to support classifying any of the properties as agricultural land. Taxpayers chose to go straight to hearing before the county board without providing the Assessor the supporting financial documents she requested in response to the affidavits she received with Taxpayers' appeals. Taxpayers assumed, but failed to meet, their burden to overcome the presumption in favor of the Assessor's 2014 assessments. The record speaks for itself. Taxpayers cannot rely on the county board's unsupported comparison of each property's actual lease income with its expected lease income under the Department of Revenue's agricultural valuation study; nor can Taxpayers meet their burden by baldly attacking the Assessor's comparison methodology. The district court and the state board properly concluded the county board's decision reversing the Assessor was unsupported by substantial evidence. We affirm the district court's order.

The four properties are the Mueller, Matuschka, Glunz, and Chicago Properties parcels. Jerome P. Glunz and John P. Glunz jointly own the Glunz parcel.

As required, each Taxpayer used the Affidavit for Agricultural Land Classification form prescribed by the Wyoming Department of Revenue. Wyo. Stat. Ann. § 39-13-103(b)(x)(A) ; Wyo. Dep't of Revenue Rules, ch. 10, § 5 (2010).

Taxpayers were on notice that they may be asked to provide additional documents to support their affidavits. Near the bottom of the page, each of Taxpayers' affidavits states, "Pursuant to § 39-1-103(b)(x)(C)... 'When deemed necessary, the county assessor may require further supporting documentation.' " Additionally, in the same chapter that contains the blank affidavit form, the Department of Revenue's rules state, "Any producer wishing to receive agricultural classification of his/her land shall provide the prescribed sworn affidavit; as well as supporting documentation , to the county assessor." Wyo. Dep't of Revenue Rules, ch. 10, § 5 (2010) (emphasis added).

Otter Creek entered into three separate leases with identical terms: one lease for the Mueller parcel, one for the Glunz parcel, and one covering both the Matuschka and Chicago Properties parcels.

The Department of Revenue's rules state that an "AUM" is short for an "animal unit month" and is "the amount of forage required to maintain a 1,000 lb. cow, with or without a calf, for one month." Wyo. Dep't of Revenue Rules, ch. 11, § 3(b).

During the county board proceedings, Chicago Properties and the Assessor agreed that a small portion of the Chicago Properties parcel contained a cabin and was, therefore, not agricultural land. The county board ordered that assessment to be remanded to allow the Assessor to determine what portion of the property should be assessed as residential. Chicago Properties argues the rest of its property should be assessed in this case as agricultural land.

During the earlier proceedings and in their briefing to this Court, the parties occasionally frame this case as an appeal of the Assessor's "refusal" to reclassify Taxpayers' properties as agricultural land. Taxpayers submitted their reclassification requests contemporaneously with their appeals to the county board and after the Assessor issued her assessments based on the previous history of assessing the properties as residential or vacant residential. We find no indication in the record that the Assessor took a separate final action on the requests, or that Taxpayers appealed any final action by the Assessor other than the notices of assessment.

The legislature's amendments to Wyo. Stat. Ann. §§ 39-13-103(b)(x)(B)(I) and (B)(III) in 2017 are not material to this appeal. See 2017 Wyo. Sess. Laws ch. 142, § 1.

While the state board in Hlavnicka endorsed the merits of the Fremont county assessor's comparison, it stated that method "may not be the only approach to determining whether the use of a particular property is consistent with its capability of produce ...." 2006 WL 3327972 at *11, ¶ 53.